MARY COHEN vs. COMMISSIONER OF THE DIVISION OF
MEDICAL ASSISTANCE.

LILLIAN I. WALKER vs. COMMISSIONER OF THE DIVISION OF
MEDICAL ASSISTANCE.

SYDNEY A. COMINS & another,[1] executors, vs. COMMISSIONER
OF THE DIVISION OF MEDICAL ASSISTANCE.

JOHN KOKOSKA , guardian,[2] vs. COMMISSIONER OF THE
DIVISION OF MEDICAL ASSISTANCE.[3]

Suffolk. Barnstable. Middlesex. May 8, 1996. - August 2, 1996.

Present: LIACOS, C.J., ABRAMS, GREANEY, & FRIED, JJ.

Medicaid. Trust, Self-settled trust, Trustee's discretion, Beneficiary. Statute,
Construction.

Discussion of the Medicaid program established in 1965 as Title XIX of
the Social Security Act, 42 U.S.C. §§ 1396 et seq., and Medicaid qualify-
ing trusts under 42 U.S.C. §§ 1396(k) and amendments and regulations
thereunder. [401-407]

Discussion of cases considering Medicaid eligibility of beneficiaries of self-
settled trusts that deny the trustee any discretion to make sums avail-
able if such would render the grantor ineligible for public assistance.
[407-408]

This court construed the provisions of 42 U.S.C. § 1396(k)(2), defining a
Medicaid qualifying trust before the amendment effected by Pub. L.
103-66, § 13611, 107 Stat. 627 (1993), to encompass any trust
established by a person (or that person's spouse) under which that
person may receive any payments in the discretion of the trustees, and
further, under the provisions of § 1396a(k)(1), the amount of money
deemed to be available to the beneficiary is the greatest amount that the
trustees in any set of circumstances might have discretion to pay out.
[408-415]

A Superior Court judge correctly concluded that the amount of money
available to the beneficiary of a 1983 self-settled trust for purposes of

[1]Stuart Comins.

[2]Of Janis Kokoska.

[3]Effective July 16, 1993, after the filing of these actions, responsibility for
the administration of the Medicaid program was transferred from the
Department of Public Welfare (department), the original defendant in these
cases, to the Division of Medical Assistance (division). St. 1993, c. 161. Ac-
cordingly, the division is now the defendant in these cases. Throughout this
opinion we refer to the defendant as the division although the department
took some of the relevant action in these cases.

Medicaid eligibility under 42 U.S.C. § 1396a(k) was, under the terms of the trust, the full amount of the trust, where the trustee had complete discretion to pay the full amount to the beneficiary, disregarding any limitation on the trustee's discretion to make distributions that would render the beneficiary ineligible for Medicaid benefits. [415-416]

A Superior Court judge correctly concluded that the amount of money available to the beneficiaries of a 1990 trust created by one spouse for the benefit of both spouses, for purposes of their Medicaid eligibility under 42 U.S.C. § 1396a(k), was the maximum amount payable under the terms of the trust, that is, the full amount of the trust net income and principal, disregarding any limitation on the trustee's discretion by reason of the beneficiaries' institutionalization. [416-419]

A Superior Court judge correctly concluded that the amount of money available to the beneficiary of a 1990 self-settled trust for purposes of the settlor's Medicaid eligibility under 42 U.S.C. § 1396a(k) was, under the terms of the trust, the full amount of interest and principal, disregarding any limitation on the trustee's discretion to distribute monies if so doing would cause the beneficiaries to be ineligible for Medicaid. [419-420]

Where the terms of a trust, settled by a conservator as authorized by the Probate Court from the proceeds of the settlement of a medical malpractice action brought on behalf of the severely disabled trust beneficiary, gave the trustee discretion to pay both income and principal to the beneficiary and limited that discretion only to ensure the beneficiary's eligibility for public assistance, the trust was properly considered a Medicaid qualifying trust; the amount deemed available to the beneficiary for purposes of Medicaid eligibility under 42 U.S.C. § 1396a(k) was the full amount of the trust. [420-424]


CIVIL ACTIONS commenced in the Superior Court Department on April 7, 1992, and November 24, 1993.

After consolidation, the cases were reported to the Appeals Court by *Paul A. Chernoff*, J., on a statement of agreed facts. The Supreme Judicial Court granted a request for direct review.

CIVIL ACTION commenced in the Superior Court Department on May 4, 1993.

The case was heard by *Cortland A. Mathers*, J., on motions for judgment on the pleadings.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

CIVIL ACTION commenced in the Superior Court Department on November 12, 1993.

The case was heard by *Julian T. Houston*, J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

CIVIL ACTION commenced in the Superior Court Department on March 25, 1994.

The case was heard by *Charles F. Barrett, J.,* on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Raymond H. Young (Robert O. Berger* with him) for John Kokoska.

*Robert M. Bonin (Mardic Marashian* with him) for Sydney A. Comins & another.

*Pamela E. Terry* for Lillian Walker.

*Donald N. Freedman (Marcia J. Glickman* with him) for Mary Cohen.

*Judy A. Levenson,* Assistant Attorney General, for the Commissioner of the Division of Medical Assistance.

FRIED, J. These four cases raise a common issue in the administration of the Medicaid program that has recurred in virtually identical form throughout the United States. In the four cases before us, the Division of Medical Assistance (division) denied the plaintiffs' eligibility for Medicaid benefits because it deemed that the plaintiffs had available to them sufficient resources of their own. In three of the cases a Superior Court judge affirmed the division's determinations, and in the fourth a Superior Court judge reported the case to the Appeals Court.[4] We begin by discussing the common issue, and then apply our conclusion to the several cases in turn.[5]

# I

## A

The Medicaid program was established in 1965 as Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq., to

---

[4]This court granted the Cohen's and the Cominses' applications for direct appellate review. This court transferred the *Walker* appeal here on its own motion. A Superior Court judge reported the *Kokoska* case to the Appeals Court; we then granted the plaintiff's application for direct appellate review.

[5]A fifth case, *Canter* v. *Commissioner of Pub. Welfare, post* 425 (1996), raises a distinct issue about the use of a different kind of trust in the context of Medicaid eligibility, and is decided separately.

provide health care to needy persons. The program, which makes funds available to individuals and those who furnish services to them, is administered by the States, but the State programs must comply with Federal statutes and regulations in order to qualify for the Federal funds which pay for a significant part of the program. See *Harris* v. *McRae,* 448 U.S. 297, 301 (1980); *Haley* v. *Commissioner of Pub. Welfare,* 394 Mass. 466, 467-468 (1985). The issue presented in these cases arises from the wish of persons with some means, perhaps even considerable means, to preserve their assets in the face of the large medical expenses faced particularly by elderly persons. While the Medicare program, 42 U.S.C. §§ 1395 et seq. (1994), is designed to provide medical insurance for elderly and disabled persons generally, the coverage of that program is not complete. Supplemental private insurance is expensive and rarely comprehensive, and certain expenses — particularly long-term institutional care — confront especially elderly individuals and their families with expenses that are likely to deplete their resources entirely. See generally Gordon, How to Protect Your Life Savings from Catastrophic Illness and Nursing Homes (1990). Many of those same expenses, though perhaps on a less generous scale, are covered for the indigent by Medicaid. See *Harris, supra* at 301-302.

In response, attorneys and financial advisers hit upon the device of having a person place his or her assets in trust so that those assets would provide for that person's comfort and well being, maybe even leaving something over to pass on his or her death, while creating eligibility for public assistance. See H.R. Rep. No. 265, 99th Cong., 1st Sess., pt. 1, at 71-72 (1985) (Committee on Energy and Commerce). The theory behind this maneuver was that, because the assets are in trust, they do not count as the grantor's assets and thus do not raise the grantor above the level of indigency needed to qualify for public assistance.[6] Courts in this State and elsewhere had ruled in various contexts that, if an individual settled assets in

---

[6] The regulations implementing the Commonwealth's codification of the Medicaid program, G. L. c. 118E (1994 ed.), establish a modest ceiling of resources said to be "available" to an applicant above which the individual is determined not to be sufficiently needy to qualify for public assistance from the program. See 106 Code Mass. Regs. § 505.110 (1991), now codified at 130 Code Mass. Regs. § 505.110 (1995) ("total value of countable assets owned by or available to persons . . . may not exceed": for one person, $2,000; for two persons, $3,000, as of July, 1995).

an irrevocable trust and the disposition of those assets was at the discretion of a trustee, no beneficiary of the trust would have a right to call for them, and so the assets could not be considered available to the beneficiary. See *Randolph* v. *Roberts*, 346 Mass. 578, 579-580 (1964) (creditor denied access to assets of testamentary; spendthrift trust to reimburse itself for beneficiary's welfare disability charges); *Pemberton* v. *Pemberton*, 9 Mass. App. Ct. 9, 19-20 (1980) (court cannot compel trustee to expend assets of spendthrift trust created by father to satisfy husband's arrearages and continuing support orders); *Zeoli* v. *Commissioner of Social Servs.*, 179 Conn. 83 (1979) (parent settled assets in trust for child; court holds assets not available to child for Medicaid purposes); *Tidrow* v. *Director, Missouri State Div. of Family Servs.*, 688 S.W.2d 9 (Mo. Ct. App. 1985) (same)[7]; *Hoelzer* v. *Blum*, 93 A.D.2d 605 (N.Y. 1983) (same). The parties have not cited any case in any jurisdiction that has applied this reasoning to a trust in which the grantor or settlor is also the beneficiary, a so-called self-settled trust, nor have we decided such a case. Indeed, as we show below, see *infra* at 414, the law as to self-settled trusts is to the contrary. Nevertheless, individuals faced with health care costs that threatened to deplete their assets seized upon this jurisprudence as sanctioning their seeming impoverishment through self-settled trusts. Thus, a grantor: was able to qualify for public assistance without depleting his assets; could once more enjoy those assets if he no longer needed public assistance; and, if such a happy time did not come, could let them pass intact pursuant to the terms of the trust to his heirs. The grantor was able to have his cake and eat it too.

There was considerable dissatisfaction with the ensuing state of affairs. The bill containing the provisions now before this court was referred in 1985 to the House Committee on Energy and Commerce. In its report recommending passage, the committee wrote:

"The Committee feels compelled to state the obvious. Medicaid is, and always has been, a program to provide

---

[7]Prior to 1986, only such assets as were actually available to a beneficiary were counted toward Medicaid eligibility. 42 U.S.C. § 1396a(a)(17)(B) (1982). The statute did not contain a separate provision concerning what is now referred to as Medicaid qualifying trusts.

basic health coverage to people who do not have sufficient income or resources to provide for themselves. When affluent individuals use Medicaid qualifying trusts and similar 'techniques' to qualify for the program, they are diverting scarce Federal and State resources from low-income elderly and disabled individuals, and poor women and children. This is unacceptable to the Committee."

H.R. Rep. No. 265, 99th Cong., 1st Sess., pt. 1, at 72 (1985).

The provisions, as finally enacted in 1986 and referred to here as the MQT statute, are the same in all relevant respects to those reported by the committee.[8] Compare H.R. Rep. No. 265, *supra* at 26-27 (Sept. 11, 1985) (committee report), with 42 U.S.C. § 1396a(k). Building on the predicate that a person's eligibility for Medicaid assistance depends on whether the resources available to that person exceed a specified maximum, the MQT statute first provides that:

"In the case of a medicaid qualifying trust [described in paragraph (2)], the amounts from the trust deemed available to a grantor, for purposes of subsection (a)(17), is the maximum amount of payments that may be permitted under the terms of the trust to be distributed to the grantor, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the grantor. For purposes of the previous sentence, the term 'grantor' means the individual referred to in paragraph (2)."

42 U.S.C. § 1396a(k)(1). Subsection (2) then goes on to define the term "medicaid qualifying trust":

"(2) For purposes of this subsection, a 'medicaid qualifying trust' is a trust, or similar legal device, established (other than by will) by an individual (or an individual's spouse) under which the individual may be the benefi-

---

[8]The Committee on Energy and Commerce indicated in its report that the MQT statute applies retroactively. See H.R. Rep. No. 265, 99th Cong., 1st Sess., pt. 1, at 73 (1985) ("Medicaid qualifying trusts that have already been established, as well as those that may be created in the future, would be subject to the [MQT statute]"). The plaintiffs do not question that such an application is appropriate.

ciary of all or part of the payments from the trust and the distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion with respect to the distribution to the individual."[9]

The rest of the House Committee report as well as later items of legislative history provide no further explanation or clarification of the terms in the MQT statute.[10] Effective April 1, 1989, the division amended its regulations to incorporate the required implementation of this statutory change. See 106 Code Mass. Regs. § 505.160 (J) (1990).[11] The regulation restates in slightly different language the provisions of the Federal statute regarding MQTs.[12]

In 1993, Congress amended the provision relating to irrevocable MQTs to provide:

"(i) if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual, the portion of the corpus from which, or the

---

[9]Subsection (3) provides that "[t]his subsection shall apply without regard to - (A) whether or not the medicaid qualifying trust is irrevocable or is established for purposes other than to enable a grantor to qualify for medical assistance under this title; or (B) whether or not the discretion described in paragraph (2) is actually exercised." 42 U.S.C. § 1396a(k)(3).

[10]The State Medicaid Manual, the Federal manual that provides interpretive guidance to the States, and the Massachusetts Medical Assistance Procedures Handbook, distributed to those who determine Medicaid eligibility for the division, do not provide any further illumination on this issue.

[11]The MQT regulations now appear at 130 Code Mass. Regs. § 505.160 (J) and are, for all relevant purposes here, the same as the regulations codified at 106 Code Mass. Regs. § 505.160 (J).

[12]"(J) Medicaid Qualifying Trusts "(1) Requirements. A Medicaid qualifying trust is a trust or similar legal device established other than by will by the applicant for or recipient of Medical Assistance or his or her spouse under which:

"(a) The applicant or recipient is a beneficiary of all or part of the payments from the trust; and

"(b) The distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion with respect to the amount to be distributed to the applicant or recipient. The amount deemed available to the applicant or recipient is the maximum amount of payments that the trustee has discretion to disburse to the applicant or recipient under the terms of the trust for the applicable budget period."

income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual, and payments from that portion of the corpus or income —

> "(I) to or from the benefit of the individual, shall be considered income of the individual, and

> "(II) for any other purpose, shall be considered a transfer of assets by the individual subject to subsection (c); and

"(ii) any portion of the trust from which, or any income on the corpus from which, no payment could under any circumstances be made to the individual shall be considered, as of the date of establishment of the trust (or, if later, the date on which payment to the individual was foreclosed) to be assets disposed by the individual for purposes of subsection (c), and the value of the trust shall be determined for purposes of such subsection by including the amount of any payments made from such portion of the trust after such date."

42 U.S.C. § 1396p(d)(3)(B).[13]

This amendment, which, unlike the MQT statute, explicitly applies only to trusts established after the effective date of the statute, see Pub. L. 103-66, § 13611(e)(2)(C), 107 Stat. 627 (1993),[14] resolves in favor of the Commonwealth beyond any possibility of argument the issue presented in these cases: if, in any circumstances any amount of money might be paid to

[13]The amendment provides that subsection (d) "shall apply without regard to — (i) the purposes for which a trust is established, (ii) whether the trustees have or exercise any discretion under the trust, (iii) any restrictions on when or whether distributions may be made from the trust, or (iv) any restrictions on the use of distributions from the trust." 42 U.S.C. § 1396p(d)(2)(C).

[14]The 1993 amendment also repealed the 1986 MQT statute. Pub. L. 103-66, § 13611 (d)(1)(C), 107 Stat. 627 (1993). The plaintiffs do not argue that since the 1993 amendment is prospective only and that the 1986 MQT statute is now repealed, the law in respect to pre-August 1993 trusts is as it was before the enactment of the 1986 MQT statute. The claimants are right not to make this argument, as the evident intention of Congress in 1993 was to supersede the 1986 MQT statute for trusts created after August 10, 1993, by a more stringent provision, not to loosen eligibility requirements for previous trusts.

a beneficiary, the maximum of such amount is deemed to be available to the beneficiary. The 1993 amendment does not, however, shed any light on the intentions of the earlier Congress. It may be said with equal plausibility that the 1993 amendment confirms the Commonwealth's interpretation of the MQT statute by stating it more explicitly, or that the later Congress intended a change therefore implying that some less stringent interpretation of the earlier provision was assumed. Thus, recourse to what has been called by the apt solecism "subsequent legislative history" is even more dubious than usual. See *Massachusetts Respiratory Hosp.* v. *Department of Pub. Welfare,* 414 Mass. 330, 333 n.4 (1993); *Palmer* v. *Selectmen of Marblehead,* 368 Mass. 620, 623 (1975).

## B

The issue posed by these cases is simply stated, although how the authoritative materials resolve that issue has been the subject of much controversy. In each of these cases, the grantor of an irrevocable trust, of which the grantor (or spouse) is a beneficiary and to which the grantor has transferred substantial assets, claims eligibility for Medicaid assistance because the trust, while according the trustee substantial discretion in a number of respects, explicitly seeks to deny the trustee any discretion to make any sums available to the grantor if such availability would render the grantor ineligible for public assistance. Thus, all these trusts seek to limit the trustees' discretion just insofar as the exercise of that discretion may make the grantor ineligible for public assistance. The grantors and their representatives argue that, since no funds are available by the terms of the trust if such funds would render the beneficiary ineligible for Medicaid under the provisions of the MQT statute and the implementing State regulations, the grantors' eligibility is assured. The Commonwealth argues that this device has no purpose other than to frustrate the stated purpose of Congress in enacting the MQT statute. Accordingly, from the time of the adoption of the regulations in 1989, it has undertaken to review the Medicaid eligibility of all persons who are beneficiaries of self-settled trusts and has denied eligibility to persons who

benefit from trusts with provisions such as we have described.[15] The consequence of holding these persons ineligible has been to require them to spend down the resources in their trusts. Several Superior Court decisions have addressed the issue we face here today, all ruling that the trust assets are available to the grantors thereby rendering them ineligible for Medicaid assistance to the extent of such assets. Decisions in Minnesota, *Matter of Kindt*, 542 N.W.2d 391 (Minn. Ct. App. 1996), Kansas, *Williams* v. *Kansas Dep't of Social & Rehabilitation Servs.*, 258 Kan. 161, 171-173 (1995), Michigan, *Ronney* v. *Department of Social Servs.*, 210 Mich. App. 312 (1995), and Florida, *Hatcher* v. *Department of Health & Rehabilitative Servs.*, 545 So. 2d 400, 402 (Fla. Dist. Ct. App. 1989), have reached the same conclusion. Only one decision, arguably distinguishable, *Miller* v. *Ibarra*, 746 F. Supp. 19 (D. Colo. 1990), favors the trust beneficiaries.

II

The plaintiffs argue that the plain words of the statute support their position. They take as their premises that: (1) the MQT statute provides that the amount deemed available to the grantor is limited to "the maximum amount of payments that may be permitted *under the terms of the trust* to be distributed to the grantor, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the grantor"[16]; and (2) that, in one way or another under the terms of these trusts, the trustees have no discretion to pay anything but benefits supplementary to, or for purposes other than those covered by, public assistance, or to make any payments that would render the grantor ineligible for public assistance. From these premises, they reason that, under the terms of the trusts, there is no discretion to pay monies that would make the grantors ineligible for assistance under the program, and that therefore the trusts assets are not available to the beneficiaries.

---

[15]Although all of these trusts were established prior to 1991 and some prior to 1986, the Commonwealth has not sought reimbursement in this action for Medicaid assistance afforded prior to the determination of ineligibility.

[16]The division worded its regulation in a slightly different manner. See note 12, *supra*. No party to this litigation argues that the Commonwealth's regulation is intended to do more or less than the MQT statute.

If this is the proper reading of the statute, it is a hard argument to overcome. See *Construction Indus. of Mass.* v. *Commissioner of Labor & Indus.*, 406 Mass. 162, 167 (1989) (when language of a statute is clear and unambiguous, plain meaning of language must be given effect). Only if the legislative history compelled a different conclusion might we depart from the plain meaning of the statute. See 2A Singer, Sutherland Statutory Construction §§ 47.37, 47.38 (5th ed. 1992) (if clerical error, court may depart from plain meaning in order to effectuate legislative intent). Cf. *Fred C. McClean Heating Supplies, Inc.* v. *School Building Comm'n of Springfield*, 341 Mass. 322 (1960) (court would not give statute harsh and unreasonable construction where doing so would thwart legislative intent). The application of this canon of construction is especially appropriate where the statute is understood to elicit reliance by knowledgeable persons drafting documents in response to it. See *Grady* v. *Commissioner of Revenue*, 421 Mass. 374, 377 (1995) ("tax statutes are to be strictly construed in accordance with their plain meaning"). As we have indicated, the legislative history consists of a general statement in a House report of the problem to which the statute is addressed and explanatory statements in later reports that explain nothing, at most repeating the words of the statute. Of course there is the canon that states that a literal reading of a statute is to be avoided if it makes the statute a nullity or causes it to fail of its essential purpose. See *Manning* v. *Boston Redevelopment Auth.*, 400 Mass. 444, 453 (1987); *Attorney Gen.* v. *School Comm. of Essex*, 387 Mass. 326, 336-337 (1982); *McCarthy* v. *Woburn Hous. Auth.*, 341 Mass. 539, 542 (1960), quoting *Bell* v. *Treasurer of Cambridge*, 310 Mass. 484, 489 (1941) (where construction of statute would lead to absurd and unreasonable conclusion, such a construction should not be adopted if language is fairly susceptible of a construction leading to a logical and reasonable result). But that canon too is of little help because the MQT statute read as the grantors would read it is not without effect. As we have stated, prior to 1986 some irrevocable trusts simply allowed complete discretion in the trustee without any further specification. If we read the MQT statute as the plaintiffs here propose, it would have the effect of making the full amount of the funds in such trusts subject to the trustee's discretion available to the grantor.

The Commonwealth's response takes its cue from a letter from the associate regional administrator of the health care financing administration (HCFA) in the United States Department of Health and Human Services.[17] The Commonwealth argues that trusts of the sort in issue here do not get trust assets or income out from under the terms of the MQT statute since the purpose of the statute is to identify when, because of trustee discretion, trust assets are available to the beneficiary, while the terms of the trusts assume eligibility and define discretion so as not to disturb it. To allow such a device, the Commonwealth asserts, would "allow grantors of trusts to make their own Medicaid eligibility rules." This argument, which reappears in all the cases, is said to show that the grantors' move in these trusts is somehow illogical or at least illegitimate. See, e.g., *Williams* v. *Kansas Dep't of Social & Rehabilitation Servs.*, 258 Kan. 161, 172 (1995), quoting Forsyth *vs.* Rowe, Conn. Super. Ct. No. CV91-0396327-S (Mar. 23, 1995). There are, however, other instances in the law where instruments are specifically drafted to take advantage of available government benefits or facilities, even making explicit reference to the statutory facility which is meant to be enjoyed. It is entirely familiar, for instance, for trusts to be drafted to take advantage of the provisions in Federal estate taxation that allow assets to be passed down and enjoyed through two generations, while being subject to lesser inheritance taxes. In the case of such "generation skipping" trusts, not only may the trust specifically define the trustees' discretion in terms of retaining eligibility for the more favorable tax treatment, but this court has reformed trust documents to overcome drafting errors that might have defeated this tax-minimizing purpose. See, e.g., *Shawmut Bank* v. *Buckley*, 422 Mass. 706, 711 (1996). It might be said that this is an example

---

[17]The health care financing administration (HCFA) is charged with the administration of the Medicaid program and its interpretive guidelines appear in the State Medicaid Manual. See *Massachusetts Hosp. Ass'n* v. *Department of Pub. Welfare*, 419 Mass. 644, 646 (1995). See also 42 U.S.C. § 1396a(a)(17)(B) (States must make determinations of availability in accordance with standards prescribed by the Department of Health and Human Services). In response to an inquiry by the division, on July 11, 1991, HCFA sent a letter to the division explaining that "exculpatory clauses," clauses of MQTs that limit "the authority of a trustee to distribute funds from a trust if such distribution would jeopardize eligibility for government programs, including Medicaid," should be disregarded.

of a facility which the law contemplates and thus does not seek to impede, while the trust device in issue here is a misuse of the law. Unfortunately that argument begs the question by assuming that the trusts in question frustrate the purpose of the statute, and therefore all doubts should be indulged against them. But this is just what needs to be shown.[18]

It is the text of the statute itself that leads to the conclusion that the grantors in all of these cases cannot render themselves eligible for Medicaid assistance by these devices. The clause "under the terms of the trust," on which plaintiffs place such heavy emphasis, nestles between the phrase "the maximum amount of payments that may be permitted" and "to be distributed to the grantor, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the grantor." The clause is most naturally read to measure the maximum amount (principal or income) to be deemed available to the grantor, asking what is the greatest amount the trustees in any circumstances have discretion to disburse. The plaintiffs read the clause as not only measuring the maximum amount available to grantors but also as carrying forward to the determination of availability the circumstances in which that amount might be paid. But the clause does not say this, and making it say this is a less natural reading than the alternative. Once we have identified the maximum amount trustees in any circumstances

[18]The Commonwealth urges us to give deference to the division's administrative interpretation of the statute. Although there is some merit to the argument, it is not served up in its most appetizing form in this case. First, there are no Federal or State regulations to which we may defer. The State regulations recast the words of the statute but do not address the difficulty we face here any more directly than does the statute itself. See 106 Code Mass. Regs. § 505.160(J) (1991). Likewise, the State Medicaid Manual does not expand on the words of the statute. See State Medicaid Manual, HCFA Pub. 45-3 at § 3215.3 (May, 1989). Second, the administrative interpretation which resulted in the denials of eligibility in this case dates only from 1991, before which time beneficiaries of trusts such as these were treated as eligible. It is usually the initial not the changed interpretation of a statute that earns the kind of deference the Commonwealth would need here. See *Barnett* v. *Weinberger*, 818 F.2d 953, 960-961 n.74 (D.C. Cir. 1987), and cases cited (deference depends on consistency of interpretation). Third, the Commonwealth's interpretation is based on an interpretation announced in a letter from a regional administrator of HCFA. This Federal interpretation, if that is what it is, was never embodied in regulations which had been the subject of notice, comment, and due promulgation.

have discretion to pay, we then proceed to ask whether that amount is so large as to render the grantor ineligible.

Out of an abundance of caution we mention another possible complication. The division's regulation has the following sentence:

> "The amount deemed available to the applicant or recipient is the maximum amount of payments that the trustee has discretion to disburse to the applicant or recipient under the terms of the trust for the applicable budget period."

106 Code Mass. Regs. § 505.160(J). This sentence in the regulation differs from the MQT statute it is intended to implement, in that it adds the phrase "for the applicable budget period."[19] We do not read this to mean that the extent of the discretion must be redefined during each budgetary period. Rather, the point of adding this phrase is to make clear that eligibility is calculated budgetary period by budgetary period, against the full amount of resources available assuming the maximum discretion that may be exercised at any time. Thus, if a trust gives the trustee discretion to pay out income, but only income whenever the trustee determines that the beneficiary has need for this income, the full amount of income produced by the MQT must be deemed an available asset of the beneficiary for each budgetary period. If, in a particular budgetary period, that amount together with other assets of the beneficiary exceeds the specified asset limitation ($2,000 for one person), then the beneficiary is ineligible. The point of the phrase is to require a recalculation of eligibility during each budgetary period. If the income of the trust falls below the prescribed maximum, or where principal is also deemed available, the amount of the remaining principal and income dip below that maximum, then during that budgetary period the beneficiary will not be made ineligible by reason of the trust. We do not read this phrase as requiring the division

---

[19]The regulations define "budget period" as "a six-month prospective period which starts on the first day of the month of application on which the applicant would have been eligible, or on the date of service of the first bill which the recipient wishes to have covered by Medical Assistance." 106 Code Mass. Regs. § 505.300.

The State Medicaid Manual, *supra*, also refers to "budget period" in this context.

to ask during each budgetary period: what is the maximum discretion that the trustee has during each period under the terms of the trust. The reading we reject would mean that a trust which denied a trustee any discretion to pay out principal or income while a beneficiary is institutionalized would have the effect of making the principal or income unavailable during any budgetary period in which the beneficiary is institutionalized. Although the regulations can bear such a reading, we do not adopt that reading because it differs from the MQT statute, and there is no reason to believe that it was the purpose of the regulation to be more permissive than the Federal statute with respect to MQTs.

Drawing these strands together, we interpret the statute to define what is an MQT. See 42 U.S.C. § 1396a(k)(2). And that is any trust established by a person (or that person's spouse) under which that person may receive any payments. This general definition is qualified only by the requirement that the trustees must be permitted to exercise some discretion — that is, the conditions for distribution may not be completely fixed for all circumstances. If there is an MQT, then subsection (1) of the MQT statute, with which we have been occupied, tells us how much money is to be deemed to be available. That amount is the greatest amount that the trustees in any set of circumstances might have discretion to pay out to the beneficiary. Thus, if there is a peppercorn of discretion, then whatever is the most the beneficiary might under any state of affairs receive in the full exercise of that discretion is the amount that is counted as available for Medicaid eligibility.[20]

We are confirmed in this reading by something akin to legislative history: a consideration of the source from which the legislative language appears to have been taken. See *Comey* v. *Hill*, 387 Mass. 11, 15 (1982), quoting 2A Sands, Sutherland Statutory Construction § 50.03, at 277-278 (4th

---

[20]It is the requirement of that peppercorn of discretion that the 1993 amendment removes, providing that eligibility is to be measured by the maximum amount available under the trust under any circumstances, whether or not the trustee enjoys any discretion. .

Section (2) of the MQT statute also requires some trustee discretion for a trust to count as an MQT at all. This condition is also absent from the 1993 amendment. See *Matter of Kindt*, 542 N.W.2d 391, 396 n.2 (Minn. Ct. App. 1996) (listing differences between MQT statute and 1993 amendment).

ed. 1973) ("Words and phrases having well-defined meanings in the common law are interpreted to have the same meanings when used in statutes dealing ·with the same or similar subject matter as that with which they were associated at common law"). Restatement (Second) of Trusts § 156 (1959) provides:

> "Where the Settlor is a Beneficiary . . . (2) Where a person creates for his own benefit a trust for support or a discretionary trust, his transferee or creditors can reach the maximum amount which the trustee under the terms of the trust could pay to him or apply for his benefit."

The plaintiffs suggest that this provision was a likely model for the Congressional enactment, and a comparison of the purpose and the language of the provision confirms their suggestion. Section 156 of the Restatement deals with a device, like the MQT, concocted for the purpose of having your cake and eating it too: the self-settled, spendthrift trust. Under such a trust, a grantor puts his assets in a trust of which he is · the beneficiary, giving his trustee discretion to pay out monies to gratify his needs but limiting that discretion so that the trustee may not pay the grantor's debts. Thus, the grantor hopes to put the trust assets beyond the reach of his or her creditors. Like the MQT statute, § 156 defeats this unappetizing maneuver by providing that, even if those assets are sought to be shielded by the discretion of a trustee, or if the trust simply declares assets unavailable to creditors, the full amount of the monies that the trustee could in his or her discretion *"under the terms of the trust"* pay to the grantor, is the amount available to the grantor and thus to his or her creditors. Not only the courts of this State, but those of many other jurisdictions have long followed this Restatement principle. See *Ware* v. *Gulda,* 331 Mass. 68, 70 (1954); *Merchants Nat'l Bank* v. *Morrissey,* 329 Mass. 601, 605 (1953). See also Scott, Trusts § 156 n.1 (3d ed. 1967 & Supp. 1985) (compiling cases).[21] We do not innovate here, nor do we see any reason to be the least bit squeamish about

---

[21]The plaintiffs argue that trust law supports their position and cite *Randolph* v. *Roberts,* 346 Mass. 578 (1964), and *Pemberton* v. *Pemberton,* 9 Mass. App. Ct. 9 (1980). But these cases concerned trusts established by individuals for the benefit of another. When the trust is not a self-settled trust, the language of the trust, even to the extent of a spendthrift clause, is

interpreting the analogous Federal statute in an analogous way to accomplish an analogously just result.[22]

## III

We now proceed to apply these generalities to the specific cases before us.

1. *Cohen.* In June, 1983, the plaintiff established the Mary Ann Cohen Trust. She was the grantor and the sole lifetime beneficiary of the irrevocable trust. The trust provides that:

"The Trustees may, from time to time and at any time, distribute to or expend for the benefit of the beneficiary, so much of the principal and current or accumulated net income as the Trustees may in their sole discretion, determine. . . . The Trustees, however, shall have no authority whatsoever to make any payments to or for the benefit of any Beneficiary hereunder when the making of such payments shall result in the Beneficiary losing her eligibility for any public assistance or entitlement program of any kind whatever. It is the specific intent of the Grantor hereof that this Trust be used to supplement all such public assistance or entitlement programs and not defeat or destroy their availability to any beneficiary hereunder."

On October 27, 1993, Cohen was admitted to a nursing

honored. See *Randolph, supra* at 579-580. The rule, however, is the opposite for self-settled trusts, see *Ware* v. *Gulda*, 331 Mass. 68, 70 (1954), and, as we have noted, the Medicaid statute only reaches trusts created by the grantor (or spouse). See 42 U.S.C. § 1396a(k)(2). See also Restatement (Second) Trusts § 156 (2) & comment f (1959).

[22]The Restatement provides further analogies to the reading of the MQT statute we adopt here. Restatement (Second) of Trusts § 157 (b) (1959) provides that in the case of a spendthrift trust or a trust for support — a genus of which the trusts in question here are a species — the beneficiary's interest is available to those who render necessary services or furnish necessary supplies to the beneficiary. Of course that is just what Medicaid does for the grantors in these cases. Indeed, § 339 of the Restatement provides roundly that "[i]f the settlor is the sole beneficiary of a trust . . . he can compel the termination of the trust, although the purposes of the trust have not been accomplished." Thus, trust attorneys are likely to be familiar with the notion that the law is anything but hospitable to arrangements such as an MQT that is designed to allow a beneficiary to have his cake and eat it too.

home. She applied for Medicaid on November 26, 1993. The division denied her application on January 11, 1994, and a welfare appeals referee affirmed the division's denial on March 10, 1994. A Superior Court judge affirmed the division's denial of her application.

This is the pure case of a trust with no other purpose than to defeat Medicaid ineligibility standards. The trustee has complete discretion to pay income, accumulated income, and principal to the settling beneficiary, save only that the trustee has no discretion to make any payments that may result in loss of public assistance. Since there is "under the terms of the trust" the discretion to pay to the beneficiary the full amount in the trust, then that is the amount deemed available to the beneficiary for the purpose of determining Medicaid eligibility. The judgment of the Superior Court is affirmed.

2. *Comins.* On January 1, 1985, Sydney Comins established the Syly Realty Trust. The only asset in this trust was the Comins's home valued in 1993 at $323,000. On August 14, 1990, Lilyan Comins established the 1990 Lilyan and Sydney A. Comins Irrevocable Trust (Comins Trust). She named herself and Sydney as the primary beneficiaries. On September 8, 1990, Sydney transferred the property in the Syly Trust into the Comins Trust.

With respect to the income, the Comins trust provides that the beneficiaries are entitled to the full income of the Comins Trust so long as they are not institutionalized. If one beneficiary is institutionalized, the trustee is instructed to pay over all income to the noninstitutionalized beneficiary to the extent it is requested by that beneficiary, or so much, if more, as is necessary and appropriate to provide him or her with those health, medical, social, and personal benefits and services which are not otherwise available. The trustee can then pay the remainder, if any, to the institutionalized beneficiary as it is necessary and appropriate to provide for his or her health, medical, social, and personal benefits and services not otherwise available from other sources. If both beneficiaries are institutionalized, the trustee is permitted only to:

"apply for the benefit of each of the primary beneficiaries only so much of the net income as is necessary and appropriate to provide each with those health, medical, social, and personal benefits and services, and only those

benefits and services which are not otherwise available to each primary Beneficiary from other sources as or when needed for his or her welfare."

With respect to the principal, the third article of the Comins Trust instrument provides that:

> "(c) *Principal with respect to Donor.* Until the later to occur of (1) the passage of thirty months from the date of the establishment of this trust and (2) the date upon which either beneficiary is first institutionalized, and also thereafter during any periods of time during which the first beneficiary to be institutionalized is not then institutionalized, the Trustee shall apply on behalf of such first beneficiary so much of the principal of the Trust as is necessary and appropriate to provide him/her with those benefits and services, and only those benefits and services, which are not otherwise available to him/her from other sources as or when needed for his/her welfare.

> "(d) *Withdrawal of Principal.* The Trustee shall also pay over or apply for the benefit of each primary Beneficiary an amount of principal as either primary Beneficiary shall direct in writing, not exceeding the lesser of $5,000 or 5% of the principal . . . provided, however, that the Trustee shall make no distributions of principal under this paragraph to a primary Beneficiary during or with respect to any time during which such primary beneficiary is institutionalized . . . ."

Both Sydney and Lilyan Comins were admitted to a nursing home and applied for Medicaid on July 15, 1993. The division denied their applications on August 11, 1993, reasoning that the trust was designed to shield the trust assets from being counted for Medicaid eligibility purposes. The division denied their appeal on October 18, 1993. The Superior Court affirmed the division's denial. Lilyan died on November 26, 1993.

In this case, Lilyan created the trust for her and her husband's benefit, thus meeting one of the alternative conditions of § 1396a(k)(2) for an MQT depending on whose ap-

plication the division is considering. The trustee has no discretion with respect to the noninstitutionalized beneficiaries, but must pay out to them the full income. When one or both becomes institutionalized, however, under the terms of the trust the trustee acquires limited discretion to pay out the full amount of the net income. Therefore, on the interpretation of the statute we adopt, the amount available to the beneficiaries is the maximum amount payable by the trustee disregarding any limitations on his discretion, and that is the full amount of the net income.

With respect to the principal, an analogous conclusion obtains. Paragraph (c) grants the trustee discretion to pay any amount of principal "as is necessary and appropriate . . . for his/her welfare." This discretion is limited, not in amount but by circumstances: the trustee has discretion until the later of two specified events occurs and "also thereafter during any periods of time during which the first beneficiary to be institutionalized is not then institutionalized." This provision allows for the care of the beneficiary during the thirty-month ineligibility period that another section of this statute imposes in order to preclude transfers in contemplation of institutionalization. See 42 U.S.C. § 1396p(c)(1); 106 Code Mass. Regs. § 505.125, now codified at 130 Code Mass. Regs. § 505.125 (1995). But as we look to the trustee's discretion only to measure the amount available, we do not consider the circumstances in which trust assets are payable to a beneficiary but rather determine the amount of assets deemed available by disregarding any limitations on trustee discretion. We conclude here too that the full amount of principal must be deemed available to the Cominses. Therefore, the decision of the Superior Court judge is affirmed.[23]

We pause to note that this case illustrates the good sense of the statute, as we read it. It is true that a trust might be written to deprive the trustee of any discretion (for instance allowing the payment only of income) and that such a limitation would be respected. But the grantor of a trust has a

[23]As to the principal, this might be a case in which the reading of the division's regulation we reject might make a difference in favor of the beneficiary. As we point out, however, the correct reading of the statute and regulations asks not what discretion the trustee has during the applicable budgetary period but only whether the amounts available, assuming the full exercise of discretion wherever and whenever it is granted, would yield an amount that would make the beneficiary ineligible during that period.

powerful incentive to provide his trustee leeway to respond to emergency and unexpected circumstances, and whatever amounts susceptible of such leeway are attributed to the beneficiary and are counted as fully available to the grantor.

3. *Walker.* On March 24, 1990, Walker created "The Clark Family Trust," an irrevocable trust of which her daughter is the trustee. Walker is the lifetime beneficiary of the trust and her three children are remainderpersons. The trust's principal is over $100,000.

Article two, paragraph A of the trust provides that the trustee "shall expend as much of the income and principal of the trust property as she in her sole discretion deems necessary for the comfortable maintenance of [Walker] subject to the restrictions contained in paragraph B of this Article." Paragraph B states:

> "The Trustee is prohibited from spending sums of interest or principal to [Walker] for her benefit for services which are otherwise available under any public entitlement program of the United States of America, the Commonwealth of Massachusetts, or any political subdivision thereof. The exercise of a discretionary power to make a distribution for [Walker's] health care, which would result in trust assets being used in substitution of public entitlement benefits is a breach of the fiduciary duties imposed on the Trustees [*sic*] under this indenture."

In July, 1991, Walker entered a nursing home. She applied for Medicaid benefits on February 26, 1993, and the division denied Walker's application. On April 20, 1993, the division denied her appeal. On January 27, 1994, a Probate and Family Court judge pursuant to a petition for instructions issued a judgment declaring that the trust limits the trustee's discretion to distribute monies from the trust if doing so would cause Walker to become ineligible for Medicaid. Nevertheless, a Superior Court judge affirmed the division's decision.

Since the measure of the monies deemed available to the beneficiary under the terms of the trust is the amount the trustee under any circumstances has discretion to disburse, and since that discretion reaches the full amount of the principal and income, the division correctly ignored the

limitation on the trustee's discretion and ruled that Walker was ineligible for Medicaid benefits. The judgment of the Superior Court is affirmed.

4. *Kokoska.* Kokoska is a severely disabled, middle aged woman. Kokoska's disabilities are a result of brain damage sustained during surgery in 1965. She received a substantial amount of money in 1968 as a result of the settlement of an ensuing malpractice action. In 1983, her conservator arranged to have the remaining proceeds placed in a trust,[24] and at that time she applied for Medicaid. The division determined that she was eligible, and she remained eligible until 1991. The relevant portions of the trust state:

"ARTICLE ONE PURPOSE OF THE TRUST

"The purpose of this Trust is to provide for the supplemental care, comfort, health, maintenance, support, education, habilitation and welfare of the Primary Beneficiary . . . taking into account the benefits of . . . assistance the Primary beneficiary otherwise receives as a result of his or her disability . . . from any state or federal government or governmental agency . . . (hereinafter 'the Benefits'). . . . [T]he trust estate shall be used to the maximum extent possible to supplement such Benefits as are received by the Primary Beneficiary . . . .

"ARTICLE TWO DISPOSITION OF INCOME

"[T]he trustee shall pay to or for the benefit of the Primary Beneficiary such portion of the net income of the Trust as in the Trustee's discretion is advisable for the Primary Beneficiary's care, comfort, health, maintenance, support, education, habilitation, and welfare. The Trustee may make payments of income on account of the Primary Beneficiary for the purchase of such property, goods, or services as from time to time are excluded from the Primary Beneficiary's eligibility for or receipt of Benefits. Without intending to be an exclusive or controlling list, such property, goods, and services may

---

[24]On September 28, 1983, a Probate Court judge authorized Kokoska's conservator to transfer all of Kokoska's property into an irrevocable trust.

include those specified by federal and state Medicaid eligibility guidelines. . . .

"ARTICLE THREE DISPOSITION OF PRINCIPAL

."The Trustee . . . may make payment from time to time of so much of the principal of the Trust as is advisable in the discretion of the Trustee to meet the needs of the Primary Beneficiary as set forth in article two."

In June, 1991, after the adoption of the MQT statute, the division came across Kokoska's trust and determined that it was an MQT and that the assets were available to her for purposes of the statute. Therefore, the division denied Kokoska Medicaid assistance. Kokoska appealed. In the meantime, the trustee sought instructions from the Probate Court. A Probate Court judge held that,

"by the terms of the trust, the trustee's discretion is limited to making distributions which are supplemental to benefits, including Medicaid benefits, to which Kokoska is entitled . . . ; that the trustee is not permitted to exercise any discretion if that exercise of discretion would render Kokoska ineligible to receive such benefits; and that, if Kokoska is ineligible to receive benefits for reasons other than the exercise of the trustee's discretion to make payments, then the trustee may make such payments for Kokoska's supplemental care and welfare."

*Young* v. *Department of Pub. Welfare,* 416 Mass. 629, 632 (1993). This court upheld the Probate Court judge's declaratory judgment but noted that the judge did not redetermine Kokoska's eligibility and that the division is not bound by the Probate Court's judgment. See *id.* at 634. Subsequently, the division denied Kokoska's appeal, and Kokoska appealed to the Superior Court. A Superior Court judge reported this case to the Appeals Court, and we granted the plaintiff's request for direct appellate review.[25]

The terms of the trust give the trustee discretion to pay

[25]On April 14, 1992, a Probate Court judge modified the judgment to permit the trustee to make payments from the trust for Kokoska's support on the condition that the trustee seek reimbursement. Presently, the assets have been exhausted, and Kokoska is again receiving Medicaid assistance.

both income and principal to the beneficiary for a wide and generally defined range of purposes, limiting that discretion only to assure Kokoska's eligibility for public assistance in spite of the resources otherwise available to her. Accordingly, as in the other instances we consider, the measure of the trustee's discretion is the full amount of the trust, both principal and income, and that is the amount deemed available to her for purposes of determining her Medicaid eligibility.

This case presents a difficulty not present in the other cases. Section 1396a(k)(2) of the MQT statute defines an MQT as a trust established by an individual or a spouse under which the individual may be the beneficiary of all or part of the payments from the trust. Kokoska argues that therefore, by its terms, the MQT statute is not applicable to her trust, since it was not Kokoska but her conservator who established the trust and did so by a decree of the Probate Court. Decisions in other States addressing this issue favor the division's position of treating this as an MQT. See *Romo* v. *Kirschner,* 181 Ariz. 239 (Ct. App. 1995) (trust established by conservator and approved by court using proceeds from personal injury action); *Thomas* v. *Arkansas Dep't of Human Servs.,* 319 Ark. 782, 784 (1995) (trust established by guardian using settlement proceeds from workers' compensation claim); *Forsyth* v. *Rowe,* 226 Conn. 818 (1993) (individual acting through conservator); *Barham* v. *Rubin,* 72 Haw. 308 (1991) (trust established by Colorado Probate Court using settlement proceeds from personal injury action); *Williams* v. *Kansas Dep't of Social & Rehabilitation Servs.,* 258 Kan. 161, 166 (1995) (trust established by guardian using settlement proceeds from personal injury action); *Matter of Kindt,* 542 N.W.2d 391, 396-399 (Minn. Ct. App. 1996) (incompetent individual grantor of injury settlement trust fund). But cf. *Trust Co.* v. *State ex rel. Dep't of Human Servs.,* 825 P.2d 1295, 1302-1303 & n.31 (Okla. 1991), cert. denied, 506 U.S. 906 (1992) (considering MQT statute in footnote; court found dispositive that intent of trust to supplement government benefits); *Miller* v. *Ibarra,* 746 F. Supp. 19, 33-34 (D. Colo. 1990) (court's holding premised on unfairness of Colorado's

"Utah Gap" rule and motivations for the creation of trust).[26] The argument, which we acknowledge Kokoska's guardian is bound to make, is unavailing. In its most formalistic terms, the proceeds of the malpractice settlement were plainly her assets in that they were used for her support for approximately eighteen years before being placed in trust, cf. *Kegel* v. *State*, 113 N.M. 646, 650 (Ct. App. 1992) (beneficiary never actually had "unrestricted legal or equitable title" to the settlement proceeds because settlement paid to parents and beneficiary jointly); *Mills* v. *Durst*, 156 Misc. 2d 676, 684-687 (N.Y. Sup. Ct. 1993) (infant never had legal right to money before it became trust corpus), and both the conservator and the Probate Court were acting solely on Kokoska's behalf in establishing the trust. See *Minnehan* v. *Minnehan*, 336 Mass. 668, 670 (1958) ("A conservator, like a guardian, has only the care and management of the ward's estate, and title to it . . . never vests in him but remains in the ward"); *Ryan* v. *Brennan*, 1 Mass. App. Ct. 469, 475 (1973) (role of guardian "confined to representation of his ward"). See also State Medicaid Manual, HCFA Pub. 45-3, at § 3215.1 (May, 1989) ("A trust that is established by an individual's guardian or legal representative, acting on the individual's behalf, falls under the definition of a Medicaid qualifying trust"). In fact, the trust instrument reads: "JANIS K. KOKOSKA . . . (hereinafter the 'Settlor' or 'Primary Beneficiary') by her conservator . . . has transferred or may transfer certain property to the Trustee hereunder."

Looking past the form, although Kokoska's situation is in some ways different from and more sympathetic than that of the other plaintiffs, in respect to the statute and its policy, her situation is the same. The MQT statute allowed for States "to waive the application of [the MQT statute] with respect to an individual where the State determines that such application would work an undue hardship," see 42 U.S.C. § 1396a(k)(4), and the 1993 amendments make special provision for certain classes of severely disabled persons, see 42 U.S.C.

---

[26]Massachusetts participates in a Federal program that provides funds to bridge the "Utah Gap," under which the medically needy are not totally disqualified from Medicaid benefits if their income and assets exceed their eligibility limit. See 130 Code Mass. Regs. §§ 506.600-506.620 (1994).

§ 1396p(d)(4)(C).[27] But apart from these provisions, the purpose of the statute is to defeat the maneuver by which persons with assets can both retain those assets and become eligible for Medicaid. Kokoska's case fits within both the plain meaning of the statute, since Kokoska's conservator acted in all respect on her behalf and did so with funds of which Kokoska was the owner, and within its evident purpose.

Nor is our own prior decision in *Young, supra,* any impediment to such a disposition of the case. As we said, the Probate Court judge correctly interpreted the terms of the trust to limit the trustee's discretion to making only payments supplementary to public assistance. But we also said that our decision does not determine Kokoska's Medicaid eligibility, which the division must determine according to the laws and regulation governing that program. See *id.* at 634. Thus, although the Kokoska trust limits the trustee's discretion, the MQT statute as we interpret it requires that the division disregard such a limitation when assessing availability. The statute asks only what the maximum amount of funds available to the beneficiary are in any circumstances pursuant to the exercise of the trustee's discretion. That amount, as we have seen, is the full amount of the interest and principal of the trust. The determination of the division is affirmed.

We note that while Kokoska and the other plaintiffs in these cases were ineligible for Medicaid, the trustees were in compliance with their several trusts in applying such principal and interest as the trusts make available to the support of their several beneficiaries. The modified determination of the Probate Court judge allowing the trustee to make payments for Kokoska's support was correct, and the condition that the Probate Court judge imposed requiring that the trustee seek reimbursement was prudent. By our decision today, no such reimbursement is in order. The judgments of the Superior Court are affirmed.

*So ordered.*

[27]See Pub. L. 99-509, 99th Cong., 2d Sess., reprinted in 1986 U.S. Code Cong. & Admin. News 3714 (legislative history indicating that purpose for enacting Pub. L. 99-509, § 9435, 100 Stat. 2070, was to respond to the possibility of the loss of Medicaid eligibility for about 1,200 mentally retarded individuals residing in Massachusetts).