**Margaret E. MASTERSON, Appellant,**

v.

**DEPARTMENT OF SOCIAL SERVICES, DIVISION OF FAMILY SERVICES,**
**Respondent.**

**No. 80426.**

Supreme Court of Missouri,
En Banc.

June 16, 1998.

C. Christy Barton, Columbia, for Appellant.

Richard J. Childress, Department of Social Services, St. Louis, for Respondent.

PRICE, Judge.

**I.**

The director of the Division of Family Services determined that Margaret Masterson was not eligible for supplemental nursing care benefits because of her interest in a Medicaid Qualifying Trust. The trial court and court of appeals agreed. We affirm. Although the trust language limits the payments to Masterson only to those that supplement government benefits, we find that the trust assets are available to Masterson because the trustee can revoke the trust and cause the entire trust corpus to be paid to her.

**II.**

On October 10, 1991, Henry Stillman, Masterson's brother, created the "Margaret Masterson Revocable Trust." Six days later,

Masterson transferred nearly all her assets to Stillman, as trustee of the trust. Masterson's funds represented the entire trust corpus. The trust presently consists of assets worth about $140,000. Article X(C) of the trust provides in pertinent part:

Neither the principal nor income of this trust shall be regarded as available resources which could disqualify her from eligibility for benefits available under Medicaid or any other governmental program. It is the Grantor's intent that the principal and income of this trust should be available, in the Trustee's sole and absolute discretion, for the limited purpose of supplementing benefits provided by available governmental programs.

This provision is designed to limit the trustee's ability to make distributions to Masterson only for the purpose of supplementing available governmental benefits. However, Article VI of the trust grants the trustee the absolute discretion to revoke, amend, or modify the trust agreement "without notice to or the consent of any beneficiary." Article X(C) provides that upon revocation "the undistributed net income and principal then constituting the trust shall be paid over and distributed to [Masterson]."

On October 28 and November 10, 1994, Masterson applied for medical assistance and supplemental nursing care. At the time Masterson was, and still is, a resident of the Geitner Home in St. Louis. The Division of Family Services ("the Division") denied Masterson's application for medical assistance because she did not occupy a "Medicaid vendor bed." [1] The Division also denied Masterson's application for supplemental nursing care. The director of the Division concluded that Masterson was ineligible because the Masterson Trust constituted an "available resource." This Court reviews the agency's decision and decides questions of law de novo. *City of Cabool v. Missouri State Board of Mediation*, 689 S.W.2d 51, 53–54 (Mo. banc 1995).

## III.

Missouri has created a state medicaid program in accordance with Title 42, Chapter 7 of the United States Code. [2] Supplemental Nursing Care ("SNC") is included in this plan. SNC provides cash grants to qualified individuals in nursing and residential facilities. *See* section 208.030, RSMo 1994. Upon receiving an application for SNC, the Division determines the applicant's eligibility pursuant to section 208.010, RSMo 1994, which states that an applicant is ineligible for public assistance if the applicant "owns or possesses resources in the sum of one thousand dollars or more."

The federal statutory scheme, however, proscribes how trust assets are to be valued when determining an applicant's available resources. At the time Masterson transferred her assets to the trust, federal law provided: [3]

(1) In the case of a medicaid qualifying trust (described in paragraph (2)), the amounts from the trust deemed available to a grantor, for purposes of subsection (a)(17) of this section, is the *maximum amount of payments that may be permitted under the terms of the trust* to be distributed to the grantor, *assuming the full exercise of discretion by the trustee* or trustees for the distribution of the maximum amount to the grantor. For purposes of the previous sentence, the term "grantor" means the individual referred to in paragraph (2).

(2) [A] "medicaid qualifying trust" is a trust ... established ... by an individual ... under which the individual may be the beneficiary of all or part of the payments from the trust and the distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion with respect to the distribution

---

1. Masterson does not challenge this finding.

2. Federal law governs Missouri's participation in the program.

3. With recent legislation, Congress has made it even more difficult to use trust instruments as vehicles for qualifying for public assistance. 42 U.S.C. section 1396a(k) (1992) was repealed in 1993. For current treatment of trust amounts, *see* 42 U.S.C. section 1396d (Supp.1998) (applicable to transfers occurring after August 10, 1993 and deeming all revocable trusts as "available resources" to the trust beneficiaries).

to the individual. 42 U.S.C. Section 1396a(k) (1992)(emphasis added).

Masterson concedes that the Masterson Trust "probably" qualifies as a Medicaid Qualifying Trust and makes no real challenge to the Director of the Division's decision finding the same.[4] Thus, the Masterston Trust falls under the ambit of section 1396a(k) and the dispositive issue in this case is whether the "maximum amount of payments that [the trustee] may be permitted" to make to Masterson would cause her to possess resources in the "sum of one thousand dollars or more."

**IV.**

The Division maintains that public policy considerations should compel us to ignore the settlor's intent that the trust assets be used only to supplement public assistance benefits. This assessment of public policy, however, is misguided. It is not our place to judge public policy when the General Assembly and Congress have spoken. This Court must "give effect to statutes as they are written." *State v. Patton*, 308 S.W.2d 641, 644 (Mo. banc 1958). At the time of Masterson's transfer, the federal and state statutory schemes allowed voluntary transfers of assets followed by periods of ineligibility. Further, it permitted claimants to become eligible for public assistance by entering into trust agreements that made their assets legally unavailable to them. Our only role is to determine if the Masterson Trust satisfied the provisions of the federal and state statutes.

Article X(A) controls normal payments from the trust to Masterson. It provides that "the principal and income of this trust should be available, in the Trustee's sole and absolute discretion for the limited purpose of supplementing benefits provided by available governmental programs." The trustee is

without authority to make payments to Masterson that would supplant or disqualify her from those programs. Accordingly, the trustee is prohibited from transferring assets to Masterson that would leave her with $1,000.00 or more in available resources. A number of courts have found this type of limitation effective to preserve eligibility for benefits. *See Young v. Ohio Dept. of Human Services*, 668 N.E.2d 908, 911 (Ohio 1996) ("The majority rule from other jurisdictions appears to hold that if the purpose of a trust is to supplement rather than supplant Medicaid (or other government benefit programs), the instrument will be enforceable as drafted."); *Missouri Division of Family Services v. Wilson*, 849 S.W.2d 104 (Mo.App. 1993); *Tidrow v. Director of Missouri State Division of Family Services*, 688 S.W.2d 9 (Mo.App.1985); *Trust Company of Oklahoma v. State ex rel. Dept. of Human Services*, 825 P.2d 1295 (Okla.1991).

Our analysis, however, cannot stop with Article X(A) and normal trust payments. Article VI of the trust grants the trustee absolute discretion to take the extraordinary act of revoking the trust.[5] This Article is not limited by Article X(A)'s statement that the trust should be available for the limited purpose of supplementing government benefits. Article X(C) provides that upon revocation the assets of the trust "shall be paid over and distributed to" Masterson. This provision also does not appear to be controlled by Article X(A). Accordingly, "under the terms of the trust", Stillman could exercise his discretion to revoke the trust and pay its assets to Masterson. Consistent with 42 U.S.C. section 1396(a)(k) (1992), this renders the assets of the trust available to Masterson for purposes of determining her eligibility for public assistance benefits. *See Allen v. Wessman*, 542 N.W.2d 748, 753 (N.D.1996). We hold, therefore, that Masterson is ineligi-

---

4. The potential issue here deals with Stillman's role as the trust's creator. In the trust Stillman, not Masterson, is referred to as the "grantor." However, Masterson concedes that her funds make up the entire trust corpus. Moreover, recent federal legislation is instructive as 42 U.S.C. section 1396p(d) (Supp 1998) states that an individual is deemed to be the trust's creator if assets of that individual were used to form all or part of the trust corpus.

5. Article Six also provides the trustee with the power to amend the trust. Presumably the trustee could choose to amend the trust into one that is irrevocable and unamendable. We can express no opinion, however, if such an alteration would affect Masterson's public assistance eligibility.

ble for public assistance under section 208.010 RSMo 1994.

## V.

The judgment of the trial court is affirmed.

All concur.