BERNARD LEBOW, guardian,[1] *vs.* COMMISSIONER OF THE
DIVISION OF MEDICAL ASSISTANCE.

Norfolk. October 5, 2000. - January 10, 2001.

Present: MARSHALL, C.J., ABRAMS, GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Medicaid. Trust,* Self-settled trust, Distribution, Trustee's discretion.

A grantor trust that authorized the trustee to distribute trust assets to the
grantor-beneficiary as he deemed necessary and advisable constituted a
medicaid qualifying trust, and all the trust assets over which the trustee
could exercise his discretion were deemed available (countable) resources
in determining the beneficiary's eligibility for Medicaid coverage.
[175-178]

CIVIL ACTION commenced in the Superior Court Department on
July 3, 1997.

The case was heard by *Charles F. Barrett,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Jeffrey L. Allen* for the plaintiff.

*Amy Spector,* Assistant Attorney General (*Barbara Green
Whitbeck* with her) for Commissioner of the Division of Medi-
cal Assistance.

COWIN, J. This case concerns the denial of Florence Rod-
nesky's application for Medicaid benefits. A Superior Court
judge affirmed a decision of the division of medical assistance
(division) that Rodnesky was ineligible for Medicaid coverage
because she had sufficient, available resources as a beneficiary
of a self-settled trust, despite her cobeneficiary's "irrevocable"
withdrawal of consent pursuant to the trust instrument which
restricted the trustee from exercising his discretion to distribute
trust assets to Rodnesky. On appeal we transferred the case to
this court on our own motion. We affirm the judgment of the
Superior Court.

---

[1] Of Florence Rodnesky.

I

The Medicaid program, established in 1965 as Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq., is designed to provide health care for indigent persons. Individuals are expected to deplete their own resources before obtaining assistance from the government. The unfortunate reality is that some individuals with significant resources devise strategies to appear impoverished in order to qualify for Medicaid benefits. One such strategy is to transfer assets into an inter vivos trust, whereby funds appear to be out of the individual's control, yet generally are administered by a family member or loved one.

The House Committee on Energy and Commerce, to which the bill containing the provisions at issue in this case were referred, expressed its dissatisfaction with the use of such trusts to obtain eligibility for Medicaid: "When affluent individuals use Medicaid qualifying trusts and similar 'techniques' to qualify for the program, they are diverting scarce Federal and State resources from low-income elderly and disabled individuals, and poor women and children. This is unacceptable to the Committee." H.R. Rep. No. 265, 99th Cong., 1st Sess., pt. 1, at 72 (1985). Congress responded, in 1986, by enacting the medicaid qualifying trust (MQT) statute, 42 U.S.C. § 1396a(k).[2] The purpose of the statute is to prevent individuals from using trust law to ensure their eligibility for Medicaid coverage, while preserving their assets for themselves or their heirs. We construe the statute with this purpose in mind.

Section 1396a(k) provides in relevant part:

"[T]he amounts from [an MQT] deemed available to a grantor . . . is [sic] the maximum amount of payments that may be permitted under the terms of the trust to be distributed to the grantor, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the grantor. For purposes of the previous sentence, the term 'grantor' means the individual referred to in paragraph (2)."

§ 1396a(k)(1). Paragraph (2) provides that an MQT is:

"[A] trust, or similar legal device, established (other than

---

[2]Congress amended the MQT statute in 1993, see 42 U.S.C. § 1396p(d), but because the amendment applies only to trusts established after August 10, 1993, it is not at issue in this case.

by will) by an individual (or an individual's spouse) under which the individual may be the beneficiary of all or part of the payments from the trust and the distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion with respect to the distribution to the individual."

§ 1396a(k)(2). The statute applies whether the trustee actually exercises the discretionary authority or whether the trust was established for a purpose other than to qualify for Medicaid benefits. § 1396a(k)(3).

In *Cohen* v. *Commissioner of the Div. of Med. Assistance*, 423 Mass. 399, 413 (1996) (*Cohen*), we interpreted the statute to define what constitutes an MQT:

"[T]hat is any trust established by a person (or that person's spouse) under which that person may receive any payments. This general definition is qualified only by the requirement that the trustees must be permitted to exercise some discretion — that is, the conditions for distribution may not be completely fixed for all circumstances."

*Id.* If the trust qualifies as an MQT, we proceed under the statute to determine how much money is deemed available:

"That amount is the greatest amount that the trustees in any set of circumstances might have discretion to pay out to the beneficiary. Thus, if there is a peppercorn of discretion, then whatever is the most the beneficiary might under any state of affairs receive in the full exercise of that discretion is the amount that is counted as available for Medicaid eligibility."

*Id.* With this background, we consider the trust here at issue.

## II

Rodnesky established an irrevocable trust on April 2, 1993, in which she named herself and her grandson, Bernard Lebow (Lebow), as the beneficiaries. Her grandson, Lebow, was also named as trustee.

The trust authorized Lebow, in his capacity as trustee, to exercise his "sole discretion" to distribute net income and principal as he deemed necessary or advisable for the health,

education, and comfortable maintenance and support of Rodnesky and himself, as the beneficiaries. However, Lebow, as trustee, could not distribute any trust assets to Rodnesky without giving his consent in his capacity as a beneficiary. Nor could Lebow, as trustee, distribute any trust assets to himself as a beneficiary without Rodnesky's consent.[3] Lebow or Rodnesky could each issue a blanket consent to allow Lebow, as trustee, to exercise his discretion in making distributions until such consent was revoked.

Rodnesky was given no right to alter, amend, revoke, or terminate the trust, but Lebow could amend the trust at any time, as long as the amendment did not "alter or diminish the beneficial interest" of Rodnesky or "eliminate or impair any power" reserved to her.[4] Both beneficiaries could disclaim any part of the trust, including disclaiming their entire interest.

At the time the trust was established, both Rodnesky and Lebow, as a beneficiary, issued blanket consents, thus giving Lebow, as trustee, the discretion to make distributions to Rodnesky or to himself. On January 5, 1995, Lebow, in his capacity as a beneficiary, signed a document in which he "irrevocably" withdrew his consent and expressed his intent to "permanently preclude" his grandmother from future distributions from the trust; on the same day, Rodnesky "irrevocably disclaim[ed]" her right to "modify, alter, amend, withdraw and/or revoke" her earlier blanket consent.[5] These actions had the effect, at least in theory, of preventing Lebow from making any further distributions to Rodnesky.

The following year, Rodnesky entered a nursing facility, and on July 22, 1996, she applied for Medicaid assistance. The division denied her application stating that she had assets in excess of the $2,000 limit governing Medicaid eligibility.[6] Rodnesky appealed from the denial to a division hearing officer, who upheld the division's decision.

---

[3]Rodnesky's consent was not required for distributions to Lebow, his spouse, or his children for their medical expenses if they could not afford the expense or the expense would impair their standard of living.

[4]The trust instrument does not expressly indicate whether Lebow was given this power in his capacity as trustee or as beneficiary.

[5]Rodnesky's counsel conceded at oral argument that the occurrence of these two events on the same day was not a coincidence.

[6]At the time of Rodnesky's Medicaid application, the trust assets totaled $239,205.

Rodnesky sought judicial review and filed a motion for judgment on the pleadings in the Superior Court pursuant to Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974). A Superior Court judge affirmed the hearing officer's decision. He concluded that the division was correct in finding Rodnesky's trust to be an MQT because Rodnesky was both the grantor and a beneficiary and because the terms of the trust gave the trustee "sole discretion" to pay for her maintenance and support from both income and principal. He concluded that, notwithstanding Lebow's "irrevocable" withdrawal of consent in his capacity as a beneficiary, Lebow, as trustee, retained discretion to pay out trust assets to Rodnesky because of his power to amend the trust (thereby rendering the consent provision irrelevant). Therefore, the full value of the trust was properly counted.

Rodnesky filed a motion to amend the Superior Court's findings, rulings, and order for judgment, which was denied. She filed a notice of appeal from the judgment and from the denial of the motion to amend. This appealed followed.

We conclude that the trust satisfies the definition of an MQT and that the full amount of the trust is deemed available to Rodnesky in calculating her Medicaid eligibility. The consent requirements, the power to amend, and Lebow's subsequent withdrawal of his consent may have been appropriate estate planning techniques, but they were ineffective to circumvent the MQT statute and the Medicaid laws.

### III

Rodnesky's trust meets the definition of an MQT: (1) she was both the grantor and one of the beneficiaries, and (2) her grandson, as trustee, had discretion to make payments of income and principal to her as necessary for her maintenance and support. See *Cohen, supra* at 413. The question is not whether Lebow, as trustee, actually exercised such discretion but whether *he had any discretion* to do so pursuant to the trust instrument. The MQT statute requires only that a trustee have a "peppercorn" of discretion to disburse trust assets to the grantor. *Id.* Here, the trust authorized Lebow, as trustee, to distribute trust assets to his grandmother as he deemed necessary and advisable; thus, he possessed sufficient discretion for Rodnesky's trust to qualify as an MQT.

Once we have determined that the trust at issue is an MQT, we consider what amount of the trust assets is deemed available

to the applicant. See *id.* Lebow, as trustee, could exercise his discretion to distribute the entire amount of the trust assets, including net income and principal, to Rodnesky as necessary for her maintenance and support. Even if Lebow does not exercise such discretion, the fact that he retains the power to do so means that the full amount of the trust is available to Rodnesky.

Lebow's "irrevocable" withdrawal of consent, in his capacity as a beneficiary, does not alter our conclusion. The trust permitted Lebow to amend the terms of the trust, as long as he did not alter or diminish Rodnesky's beneficial interest. It follows that he could amend the trust at any time to eliminate the consent requirement. Accordingly, there is some circumstance (i.e., an amendment to the terms of the trust) under which Lebow, as trustee, could exercise his discretion to make payments to Rodnesky, and the full amount that he could distribute (i.e., the entire amount of the trust) will be counted as available to Rodnesky. See *Cohen, supra* at 413.

## IV

Rodnesky makes several arguments, most of which relate to Lebow's revocation of consent in his capacity as a beneficiary. We consider each of Rodnesky's arguments in turn.

Rodnesky claims first that the trustee has no real discretion to disburse trust assets to her because Lebow, as trustee, could not exercise such discretion unless Lebow, as beneficiary, consented to any such disbursement. However, because there are some circumstances in which the grantor may receive payments, e.g., should Lebow consent to such distribution (which he did in writing when the trust was established), the trust qualifies as an MQT under *Cohen.*

Rodnesky claims that *Cohen* does not govern this case because the instant trust does not expressly restrict the trustee's discretion so as to render Rodnesky eligible for Medicaid. Each of the trusts at issue in *Cohen,* "while according the trustee substantial discretion in a number of respects, explicitly [sought] to deny the trustee any discretion to make sums available to the grantor if such availability would render the grantor ineligible for public assistance." *Cohen, supra* at 407. Our decision in *Cohen,* however, was not as limited as Rodnesky suggests. The interpretation of the MQT statute in *Cohen* applies to all cases in which there must be a determination whether a trust satisfies

the definition of an MQT under the pre-1993 provisions. The trust need not explicitly reference Medicaid eligibility. See *id.* at 405 n.9, quoting 42 U.S.C. § 1396a(k)(3).

Rodnesky then attempts to distinguish the present trust from those in *Cohen* because she cannot force Lebow, as trustee, to exercise his discretion or compel him as a beneficiary to consent to distribution. This is a misreading of *Cohen*: a trust is an MQT if the trustee *may* exercise any discretion so that the conditions for distribution are not "completely fixed for all circumstances." *Cohen, supra* at 413. The issue is whether Lebow, as trustee, has the power to make a distribution, not whether he is required to do so.[7]

Rodnesky also attempts to distinguish *Cohen* because the trusts at issue there did not provide for a mechanism to foreclose permanently the trustee's discretion. Lebow's "irrevocable" withdrawal of consent, in his capacity as a beneficiary, however, did not permanently divest Lebow, as trustee, of discretion. Lebow could, at any time, exercise his power to amend the trust to eliminate the consent requirement, thereby permitting Lebow, as trustee, to disburse trust assets to Rodnesky.

Rodnesky next argues that Lebow's power to amend the trust in the future is not sufficient to give her a present property right in the trust assets. The short answer to this is that the Federal statute declares these assets countable under these circumstances. It does not matter whether a right in a trust has vested under traditional trust concepts.[8]

Rodnesky relies on the fact that the consent initially given by Lebow, as a beneficiary, to distribute trust assets to her was later withdrawn, so that payment was temporarily "foreclosed." This is of no avail. Consent could always be reinstated. The issue is not whether the trustee has the authority to make payments to the grantor at a particular moment in time. Rather, if there is *any* state of affairs, at *any* time during the operation of

---

[7]Contrary to Rodnesky's argument, *Masterson v. Department of Social Servs., Div. of Family Servs.*, 969 S.W.2d 746, 748 (Mo. 1998), does not support her position. *Masterson* is similar to the present case in that the *Masterson* trust contained a consent requirement. The *Masterson* court upheld the denial of Medicaid assistance to the beneficiary because it concluded that the trustee had a fiduciary obligation to pay for the beneficiary's medical costs.

[8]In this regard, Rodnesky relies on the case of *Markham v. Fay*, 74 F.3d 1347 (1st Cir. 1996). *Markham* is distinguishable, however, as it involved a Federal tax lien on trust property and did not concern the availability of trust assets under an MQT and the interpretation of the statute here at issue.

the trust, that would permit the trustee to distribute trust assets to the grantor, those assets will count in calculating the grantor's Medicaid eligibility.

We conclude that Rodnesky's trust satisfies the definition of an MQT and that the full amount of the trust assets is available to Rodnesky in calculating her Medicaid eligibility. Because the amount exceeded the $2,000 limit governing Medicaid eligibility, the division properly denied Rodnesky Medicaid benefits. We therefore affirm the decision of the Superior Court.

*So ordered.*

Justice Abrams participated in the deliberation on this case, but retired before the opinion was issued.