Nickerson, Gary A., J.
The plaintiff, Ethel Victor (“Victor”), filed suit under G.L.c. 30A, §14 challenging MassHealth’s decision denying her application for Medicaid benefits, based on a determination that her countable assets exceeded the program limit, which a hearing examiner affirmed. The defendant administers the MassHealth program, including the distribution of Medicaid benefits. The matter before the court is Victor’s motion for judgment on the pleadings. The parties submitted briefs and the court held a hearing on April 14, 2009.

BACKGROUND

On July 24, 1981, Victor’s husband, Samuel Victor (“the Donor”), executed the Samuel Victor 1981 Family Trust (“the Family Trust”). The instrument declared that the “Donor has delivered to the Trustee the policies of insurance set forth in the Trustee’s separate receipt and Ten ($10.00) Dollars in cash, and is causing the death benefits thereunder to be made payable to the Trustee. The proceeds of such policies and the Ten ($10.00) Dollars in cash are to be held in trust and distributed as hereinafter set forth.” The Family Trust provided that additional property could be added by either the Donor or beneficiaries, with the consent of the Trustee, “as if originally included hereunder.” The Donor also reserved rights and authority for himself in the instrument, such as the right to change beneficiaries and receive payments during his lifetime.
The Family Trust identified Victor as the primary beneficiary, and the couple’s daughter as Trustee. Article Nine required the creation of a Marital Deduction Trust, entitled Trust A, if Victor survived the Donor. Specifically, the Trustee would be required to establish a separate trust in the sum of $250,000 from the Family Trust corpus, “minus any reduction in the Marital Deduction imposed by Section 2056(c)(1)(B) of the Internal Revenue Code, or such lesser amount, or nothing, as is the minimum necessary to reduce the Donor’s estate tax liability to zero.”[2] At the Donor’s death, “the Trustee shall pay all the income from Trust A in convenient installments but not less frequently than quarter annually to [Victor] during her lifetime.” Additionally, “the Trustee shall pay so much of the principal of this Trust A to [Victor] from time to time during her lifetime in such amount or amounts and at such time as she may request by an instrument in writing delivered to the Trustee, or in the absence thereat in the Trustee’s discretion.”
The Family Trust also provided that the Trustee must retain the balance of the trust corpus in a separate trust, Trust B. If Victor survived the Donor, the Trustee would be required to “pay to or for the benefit of [Victor] so much of the income and/or so much of the principal [from Trust B] at such times and in such proportions as the Trustee in her sole discre *591 tion, may from time to time deem necessary or advisable for the health, maintenance, support, or education of [Victor] . . .” However, “[t]he Trustee shall not invade the principal of this Trust B for the benefit of [Victor] until such time as the principal of Trust A shall be completely exhausted.” The instrument declared that the “Donor’s primary objective during the lifetime of [Victor] is to provide for her care and comfort.”
The Donor also executed a will on the same day, July 24, 1981. Article Five created a residuary clause whereby the remainder of the Donor’s estate would pour over to the Family Trust. The Donor died on January 27, 1983, and thereafter a probate court in Florida admitted the will. The record indicates that $160,000, in the form of certificates of deposit, passed into the Family Trust under the will. The record indicates that the Donor had no estate tax liability.
On December 26, 2006, the Oak Knoll Health Care Center admitted Victor. On May 3, 2007, Victor executed a document that purported to be effective February 6,1998, referencing that the Trustee had loaned $39,985.44 to Victor between 1998 and 1999. The record indicates that on March 26, 2007, Victor made payments to the Trustee totaling $21,500, which the Trustee placed back into the Family Trust. Thereafter on May 7, 2007, Victor filed an application with Mass-Health for long-term health care.
On September 11, 2007, MassHealth issued a denial notice based on the conclusion that Victor had countable assets totaling $163,077 in the Family Trust, which placed her over the program limit of $2,000. After a timely appeal to the Board of Hearings, a hearing examiner affirmed the decision. Specifically, the hearing examiner concluded that the Family Trust constituted a Medicaid Qualifying Trust (“MQT”), as the Donor created it during his lifetime and did not fund it solely by his will. The hearing examiner also concluded that the assets in either Trust A or Trust B were countable, placing Victor over the program limit.

DISCUSSION

I. Standard, of Review

Under G.L.c. 30A, §14, any person aggrieved by a decision of any agency in an adjudicatoiy proceeding has the right to appeal that decision to the Superior Court. A court may reverse or modify an agency decision “if it determines that the substantial rights of any party may have been prejudiced,” because the decision is “unsupported by substantial evidence,” or is “arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law.” G.L.c. 30A, § 14(7). The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. See Merisme v. Board of Appeals on Motor Vehicle Liab. Policies & Bonds, 27 Mass.App.Ct. 470, 474 (1989).
When reviewing an agency’s decision, “the court shall give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.” G.L.c. 30A, §14(7). “If [an] agency has, in the discretionary exercise of its expertise, made a choice between two fairly conflicting views, and its selection reflects reasonable evidence, [a] court may not displace [the agency’s] choice . . . even though the court would justifiably have made a different choice had the matter been before it de novo.” Lisbon v. Contributory Ret. Appeal Bd., 41 Mass.App.Ct. 246, 257 (1996) (internal quotations omitted).

II. Medicaid and MQTs

“The Medicaid program, established in 1965 as Title XIX of the Social Security Act, 42 U.S.C. §§1396 et seq., is designed to provide health care for indigent persons,” and as such, “individuals are expected to deplete their own resources before obtaining assistance from the government.” Lebow v. Commissioner of the Div. of Med. Assistance, 433 Mass. 171, 172 (2001). “The program, which makes funds available to individuals and those who furnish services to them, is administered by the States, but the State programs must comply with Federal statutes and regulations in order to qualify for the Federal funds which pay for a significant part of the program.” Cohen v. Commissioner of the Div. of Med. Assistance, 423 Mass. 399, 402 (1996).
A “ ‘[MQT]’ is a trust, or similar legal device, established (other than by will) by an individual (or an individual’s spouse) under which the individual may be the beneficiary of all or part of the payments from the trust and the distribution of such payments is determined.by one or more trustees who are permitted to exercise any discretion with respect to the distribution to the individual.” Cohen, 423 Mass. at 404-05, quoting 42 U.S.C. §1396a(k) (2) .[3] The amount of a MQT “deemed available to a grantor” is “the maximum amount of payments that may be permitted under the terms of the trust to be distributed to the grantor, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the grantor.” Lebow, 433 Mass. at 172, quoting 42 U.S.C. §1396a(k)(l). Under the MQT statute, “the term ‘grantor’ means the individual referred to in paragraph (2),” namely either the individual who created the trust or their spouse. Id. The MQT Statute applies “without regard to — (A) whether or not the [MQT] is irrevocable or is established for purposes other than to enable a grantor to qualify for medical assistance under this title; or (B) whether or not the discretion described in paragraph (2) is actually exercised.” Cohen, 423 Mass. at 405 n.9, quoting 42 U.S.C. §1396a(k)(3).
Congress enacted the MQT Statute in 1986 “to prevent individuals from using trust law to ensure their eligibility for Medicaid coverage, while preserving their assets for themselves or their heirs.” Lebow, 433 Mass. at 172. The House Committee on Energy and *592 Commerce explained: “Medicaid is, and always has been, a program to provide basic health coverage to people who do not have sufficient income or resources to provide for themselves. When affluent individuals use [MQTs] and similar ‘techniques’ to qualify for the program, they are diverting scarce Federal and State resources from low-income elderly and disabled individuals, and poor women and children. This is unacceptable to the Committee.” Cohen, 423 Mass. at 403-04.

III. Whether the Family Trust Is a MQT

Victor argues that the hearing examiner made an error of law, and acted arbitrarily and capriciously, by concluding that the Family Trust is a MQT, pursuant .to 130 Code Mass. Regs. §520.022 (2009). MassHealth responds that the hearing examiner interpreted the Regulation consistently with the MQT Statute, finding that the Donor neither established nor solely funded the Family Trust by will. The court agrees and concludes that Victor has failed to establish the invalidity of the hearing examiner’s decision.
Victor relies upon 130 Code Mass. Regs. §520.022(B)(1), which applies to “Trusts or Similar Legal Devices Created before August 11, 1993.” The Regulation defines a MQT as “a revocable or irrevocable trust or similar legal device, created or funded by the individual or spouse, other than by will, under which: (a) the individual is a beneficiary of all or part of the discretionary or required payments or distributions from the trust; and (b) a trustee or trustees are permitted to exercise any discretion to make payments or distributions to the individual.” Victor seizes upon the “created or funded . . . other than by will” language, and argues the Family Trust is exempted because her spouse, the Donor, funded it through the residuary clause of his will. Victor cites to Clymer v. Mayo, 393 Mass. 754 (1985), and argues the Donor created a valid pour-over trust funded by his will.
The burden is on Victor to establish the invalidity of the decision. Merisme, 27 Mass.App.Ct. at 474. While it is “not yet clear whether pour over trusts will also be exempted” under the MQT Statute, P.M. An-nino, Estate Planning §29.11, at 465 (3d. ed. 2007 & Supp. 2008), Victor cites no law supporting her legal position. Victor cites Clymer, but that case involved an inter vivos trust fully funded by will in a non-Medicaid context. 393 Mass, at 755-57. Moreover, the court agrees with MassHealth that Victor’s interpretation would impermissibly broaden the MQT statutory exemption beyond trusts established by will. See Cohen, 423 Mass, at 404-05 (MQTs are “established (other than by will)”). It is well-established that State programs must comply with Federal statutes and regulations. See id. at 402; 130 Code Mass. Regs. §515.002(B) (2009) (Medicaid regulations are “intended to conform to all applicable federal and state laws and will be interpreted accordingly”). Consequently, the hearing examiner did not commit legal error in attempting to reach a consistent interpretation, rather than just relying on a narrow reading of the State regulation’s language.
Here, the record indicates that the hearing examiner concluded that only trusts solely funded by will were exempted under the MQT Statute. Regarding the Family Trust, the hearing examiner found that it had not been solely funded by will, based on the instrument expressly stating that the Donor provided $10 and life , insurance policies to the Trustee, as well as the Trustee stating that she “probably” received the $10. Consequently, the hearing examiner found that the Donor placed at least $10 in the Family Trust during his lifetime.[4] In response, Victor points to the Trustee’s assertion that no life insurance policies were received, and a family attorney who asserts that funding only came from the will. Considering that this court must defer to the hearing officer’s determinations of credibility, to agency expertise, and cannot displace an agency decision between two fairly conflicting views, Lisbon, 41 Mass.App.Ct. at 257, the court will not substitute its judgment and conclude that the Family Trust solely received funding by will.
Victor also argues the Family Trust is not a target of the MQT Statute, rather Congress sought to address different devices, such as self-settled trusts.[5] The court, however, recognizes that the statutory purpose has been interpreted broadly as preventing “individuals from using trust law to ensure their eligibility for Medicaid coverage, while preserving their assets for themselves or their heirs,” and that courts must “construe the statute with this purpose in mind.” Lebow, 433 Mass, at 172.[6] In fact, courts have broadly interpreted the scope of the MQT Statute, emphasizing form over substance. See Miller v. State of Kansas Dep’t of Soc. & Rehab. Servs., 275 Kan. 349, 359-60 (2003) (placing substance over form to conclude the surviving spouse became co-settlor of deceased husband’s trust by refusing her elective share to take under a discretionary trust); Ronney v. Department of Soc. Servs., 210 Mich.App. 312, 318-19 (1995) (holding the MQT Statute applied to a trust established by a guardian, who did not strictly fit into the statutory definition of grantor). Therefore, Victor has failed to demonstrate that the hearing examiner’s decision is premised on an error of law or a material error of fact.

IV. Whether the Family Trust Assets Are Countable

In addition, Victor argues the hearing examiner erred in concluding that Trust A should have been funded under the language of the Family Trust, since the Donor had no estate tax liability. Victor contends that only Trust B actually received funding, and the assets are non-countable because Victor has no right to compel payment and has not received any payments, citing 130 Code Mass. Regs. §520.024(A) (2009). The court need not address the Trust A argument because it concludes MassHealth would still *593 prevail even if only Trust B received funding, based on the discretion afforded to the Trustee.[7]
In Cohen, the Supreme Judicial Court explained that 42 U.S.C. §1396a(k)(l) specifies howmuch money is deemed available when determining eligibility: “the greatest amount that the trustees in any set of circumstances might have discretion to pay out to the beneficiary.” 423 Mass. at 413. In fact, “if there is a peppercorn of discretion, then whatever is the most the beneficiary might under any state of affairs receive in the full exercise of that discretion is the amount that is counted as available for Medicaid eligibility." This concept is also reflected in 130 Code Mass. Regs. §520.022(B) (2), where the “maximum amount of payments or fair-market value of property that may be permitted under the terms of the trust to be distributed to the individual assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the individual is countable in the determination of eligibility.” While 130 Code Mass. Regs. §520.024(A) provides general trust rules and a different standard counting the amount a trustee is required to pay and has actually paid, the hearing examiner cannot be found to have erred in applying the specific law governing MQTs.
Here, Trust B provides the Trustee with the “sole discretion” to pay Victor income or principal for her health, maintenance, support, or education. This broad scope of discretion is consistent with the Donor’s stated objective in creating the Family Trust: the “Donor’s primary objective during the lifetime of [Victor] is to provide for her care and comfort.” As for conditions on her discretion, the Trustee cannot distribute principal from Trust B until Trust A has been completely exhausted. Since Victor maintains that Trust A never received funding, however, this condition would not be applicable in this case. Consequently, assuming maximum discretion by the Trustee, all of the principal and income in Trust B would be countable because there are no present circumstances limiting the Trustee’s discretion. Therefore, the court concludes the hearing examiner’s decision is supported by law and the record.

ORDER

For the reasons stated above, it is hereby ORDERED that the plaintiffs motion for judgment on the pleadings be DENIED. It is furthered ORDERED that MassHealth’s decision be AFFIRMED

The instrument provided, however, “that if the Donor’s adjusted gross estate is more than Five Hundred Thousand ($500,000.00) Dollars then there shall be left to the Donor’s wife one-half of the Donor’s adjusted gross estate as that figure is deterfmined for Federal Estate Tax purposes minus any reduction in the Marital Deduction imposed by Section 2056(c)(1)(B) of the Internal Revenue Code.”

Congress amended the MQT Statute in 1993, but 42 U.S.C. §1396a(k)(2) still applies to tmsts created before August 11, 1993. See Cohen, 423 Mass, at 406 n.14.

The court notes that the hearing examiner performed the analysis with the aid of only one accounting of the Family Trust, for the period January 1, 2006 to March 1, 2007, even though the trust called for annual accounting. The record also does not contain the receipt mentioned in the Family Trust regarding life insurance policies. The absence of such vital documents undercuts the credibility of the appellant’s witnesses and the tenability of her claims.

The court notes how Victor has attempted to characterize $39,985.44 worth of distributions from the Family Trust as a loan, when the distributions were made more than seven years prior and Victor is entitled to distributions under the Family Trust. Additionally, Victor sought to memorialize the “loan” just weeks before she applied for MassHealth benefits.

The MQT Statute expressly applies “without regard to— (A) whether or not the [MQT] is irrevocable or is established for purposes other than to enable a grantor to qualify for medical assistance under this title; or (B) whether or not the discretion described in paragraph (2) is actually exercised.” Cohen, 423 Mass, at 405 n.9, quoting 42 U.S.C. §1396a(k)(3).

Nonetheless the court is of the opinion that the plain reading of Sections 9 and 10 of the Family Trust required the Trustee, given the resources at hand after the death of Mr. Victor, to fund Trust A entirely, leaving Trust B empty.