JEANNETTE GUERRIERO vs. COMMISSIONER OF THE DIVISION
OF MEDICAL ASSISTANCE.

Essex. October 5, 2000. - April 3, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Medicaid. Trust*, Irrevocable trust, Distribution, Trustee's discretion.

With respect to a Medicaid qualifying trust created in 1987 and subject to the
provisions of 42 U.S.C. § 1396a(k) then in effect, the settlor's "irrevoc-
able waiver" in 1991 of any right as beneficiary to receive principal from
the trust deprived the trustee, in the circumstances, of any discretion to pay
trust principal to the settlor; as a consequence, the trust principal did not
constitute an available resource for purposes of determining the settlor's
eligibility for Medicaid benefits. [631-635]

CIVIL ACTION commenced in the Superior Court Department on
November 4, 1998.

The case was heard by *Robert A. Barton*, J.

The Supreme Judicial Court granted an application for direct
appellate review.

*Amy Spector*, Assistant Attorney General (*Shannon DeBra*,
Assistant Attorney General, with her) for the defendant.

*Mark J. Sampson* for the plaintiff.

COWIN, J. This case concerns Jeannette Guerriero's applica-
tion for Medicaid benefits. The division of medical assistance
(division) denied the application on the ground that Guerriero
held sufficient, available resources as a beneficiary of the
principal of a self-settled trust. Guerriero filed a complaint in
the Superior Court pursuant to G. L. c. 30A, § 14, challenging
the division's inclusion of the trust principal as a basis for
denying her benefits. Relying on an amendment to the Medicaid
statute enacted by Congress in 1993, a Superior Court judge
reversed the division's decision. We granted the division's ap-
plication for direct appellate review. We affirm the judgment of
the Superior Court but on grounds different than those on which
the trial judge relied.

1. *Background.* On June 18, 1987, Jeannette Guerriero (Guerriero) established the Guerriero Family Trust (trust), an irrevocable, inter vivos trust, naming Guerriero and her living issue as beneficiaries. Article IV of the trust provides the trustee with the discretion to pay income or principal of the trust to "the SETTLOR," Guerriero, or her then living issue as the trustee "deems necessary or advisable." Article XX of the trust provides that "the SETTLOR does not reserve any right to alter, amend, revoke or terminate this Trust in whole or in part."

On February 4, 1991, Guerriero signed a notarized document entitled "Waiver of Jeannette L. Guerriero," in which she declared that she did "irrevocably and unequivocably [*sic*] waive, renounce and refuse to accept any and all right, title or interest which [she] may have now or in the future in the principal of the 'Guerriero Family Trust.' " Approximately seven years later, on May 15, 1998, Guerriero submitted an application for Medicaid benefits to the division. In evaluating Guerriero's application, the division counted the assets in the trust, which the division valued at $87,118. Because of the program limit of $2,000 for "countable assets,"[1] the division determined that Guerriero was not eligible for Medicaid and denied Guerriero's application for benefits.

Guerriero appealed to the division's board of hearings (board), which upheld the division's decision. Guerriero then filed the present action seeking review of the division's decision. Citing 42 U.S.C. § 1396p(d)(3)(B)(ii), as enacted in 1993, the Superior Court judge overturned the division decision, concluding that the division should have excluded the principal of the trust because Guerriero's waiver deprived the trustee of any discretion to pay trust principal to Guerriero.[2]

2. *Medicaid qualifying trusts.* As explained in the related case of *Lebow* v. *Commissioner of the Div. of Med. Assistance, ante* 171, 172 (2001), Congress enacted 42 U.S.C. § 1396a(k)(1) to

---

[1]Countable assets are "all assets that must be included in the determination of [Medicaid] eligibility." 130 Code Mass. Regs. § 520.007 (1999).

[2]Guerriero also claimed that the division committed an error of law by treating her "irrevocable waiver" as an attempted, and failed, disclaimer under G. L. c. 191A, § 3. The Superior Court judge rejected the division's reliance on this statute, and the division has not challenged this ruling on appeal.

deal with the emergence of Medicaid qualifying trusts (MQTs). Enacted in 1986, this section originally provided:

> "In the case of a medicaid qualifying trust . . . the amounts from the trust deemed available to a grantor, for purposes of [determining Medicaid eligibility], is the maximum amount of payments that may be permitted under the terms of the trust to be distributed to the grantor, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the grantor. For purposes of the previous sentence, the term 'grantor' means the individual referred to in paragraph (2)."

42 U.S.C. § 1396a(k)(1).

When this section was enacted, § 1396p(c)(1) of the Medicaid statute already provided a thirty-month look-back period for discovering transfers of assets for less than fair market value made in order to render the transferor eligible for Medicaid benefits.[3] At the time Congress inserted § 1396a(k)(1) governing MQT's, the look-back period contained in § 1396p(c)(1) had been part of the Medicaid statute for approximately four years. Pub. L. 97-248, Title I, § 132(b), 96 Stat. 370 (1982).

In 1993, Congress amended the Medicaid statute, repealing the entire provision of § 1396a(k) and replacing it with § 1396p(d). *Cohen* v. *Commissioner of the Div. of Med. Assistance*, 423 Mass. 399, 405-406 & n.13 (1996). With specific regard to irrevocable trusts, § 1396p(d)(3)(B) now excludes

---

[3]Prior to 1993, § 1396p(c)(1) provided, in pertinent part:

> "In order to meet the requirements of this subsection . . . the State plan must provide for a period of ineligibility for nursing facility services and for a level of care in a medical institution equivalent to that of nursing facility services . . . in the case of an institutionalized individual . . . who, or whose spouse, at any time during or after the 30-month period immediately before the date . . . the individual applies for such assistance while an institutionalized individual disposed of resources for less than fair market value. The period of ineligibility shall begin with the month in which such resources were transferred and the number of months in such period shall be equal to the lesser of — (A) 30 months . . . ." *Id.*

"any portion of the trust from which, or any income on the corpus from which, no payment could under any circumstances be made to the individual." 42 U.S.C.A. § 1396p(d)(3)(B)(ii) (West Supp. 2000). The 1993 legislation also amended the look-back period in § 1396p(c), by lengthening the look-back period to thirty-six months and creating a longer, trust-specific look-back period of sixty months. 42 U.S.C.A. § 1396p(c)(B)(i) (West Supp. 2000). The 1993 amendments apply only to trusts created after the effective date of the statute. *Cohen* v. *Commissioner of the Div. of Med. Assistance, supra* at 406, citing Pub. L. 103-66, § 13611(e)(2)(C), 107 Stat. 627 (1993).

Relying on the amended portions of the statute, specifically § 1396p(d)(3)(B)(ii), the Superior Court judge ruled that the assets of the trust could not be counted in determining Medicaid eligibility because after the "irrevocable waiver" was executed by Guerriero, "no payment could under any circumstances be made to the individual." The judge's reliance on this section was in error because the amended statutory section applies only prospectively, and the trust was established in June, 1987, almost six years prior to the amendment's enactment. Thus, the trust is subject to review under the earlier 42 U.S.C. § 1396a(k) (1988).

3. *Counting Assets Under 42 U.S.C. § 1396a(k).* As we explained in *Cohen* v. *Commissioner of the Div. of Med. Assistance, supra* at 413:

> "[An MQT] is any trust established by a person (or that person's spouse) under which that person may receive any payments. This general definition is qualified only by the requirement that the trustees must be permitted to exercise some discretion — that is, the conditions for distribution may not be completely fixed for all circumstances."

If the trust qualifies as an MQT, we proceed under the statute to determine how much money is deemed available:

> "That amount is the greatest amount that the trustees in any set of circumstances might have discretion to pay out to the beneficiary. Thus, if there is a peppercorn of discretion, then whatever is the most the beneficiary might under

any state of affairs receive in the full exercise of that discretion is the amount that is counted as available for Medicaid eligibility."

*Id.* Accordingly, in order to decide if the principal of the trust is "available" to Guerriero, we must determine whether the trustee maintained discretion to distribute principal to Guerriero under the terms of the trust after the execution of the "irrevocable waiver."

In a written trust, the nature and extent of a trustee's discretion as to any issue is defined by (1) the terms of the trust instrument and (2) in the absence of any provision in the terms of the trust, by the rules governing the duties and powers of the trustee. Restatement (Second) of Trusts § 164 (1959).[4] If the trustee violates any duty to a beneficiary, the trustee will be liable for "breach of trust." Restatement (Second) of Trusts, *supra* at § 201.[5] Accordingly, the question is whether the "irrevocable waiver" completely deprived the trustee of any discretion to distribute trust principal[6] to Guerriero, evaluating the trustee's discretion in light of his duties imposed by the written trust instrument and his relationship to the parties of the trust.

---

[4]The Restatement (Second) of Trusts § 164 (1959) provides that "[t]he nature and extent of the duties and powers of the trustee are determined (a) by the terms of the trust . . . and (b) in the absence of any provision in the terms of the trust, by the rules stated in §§ 169-196." Explaining the nature of a trustee's extra-instrument duties, comment h to § 164 provides, in pertinent part:

> *"Duties determined by trust relationship.* Many of the duties of the trustee to the beneficiary are imposed by the terms of the trust, either in words or by other manifestations of the settlor's intent. Some of the duties of the trustee, however, may not be imposed by the terms of the trust, but may arise from the nature of the relationship."

Restatement (Second) of Trusts, *supra* at 343-344.

[5]Section 201 provides: "A breach of trust is a violation by the trustee of any duty which as the trustee he owes to the beneficiary." *Id.* at 442.

[6]The question of income is not at issue because in cases such as this involving an institutionalized person, the applicant's countable income does not affect Medicaid eligibility. Such eligibility is typically based only on the applicant's available "assets," a term that does not include income from a trust. See 130 Code Mass. Regs. § 520.003 (1997); 130 Code Mass. Regs. § 520.001 (1997); 130 Code Mass. Regs. § 520.009(A) (1997).

Under trust principles, the beneficiary of a trust holds the right to transfer his interest absent a restraint on alienation. Restatement (Second) of Trusts § 132 (1959).[7] See A.W. Scott & W.F. Fratcher, Trusts § 132 (4th ed. 1987). The trustee has a duty to exercise reasonable care and skill in the administration of the trust. Restatement (Second) of Trusts, *supra* at § 174. See *Welch* v. *Flory*, 294 Mass. 138, 142 (1936). "If the beneficiary transfers his interest and the trustee makes a payment or conveyance to the transferor-beneficiary when the trustee has notice of the transfer, the trustee is liable to the transferee." Restatement (Second) of Trusts, *supra* at § 226 comment c, at 524-525. See *id.* at § 201 comment d, at 444 (cross referencing "breach of trust" with "liability of the trustee for payments . . . made to persons other than the beneficiary"); *Security Bank of N.Y.* v. *Callahan*, 220 Mass. 84, 89 (1915). Cf. Restatement (Second) of Trusts, *supra* at § 155 (2) (same rule for discretionary trusts).

When Guerriero signed her "irrevocable waiver," she effectively transferred her interest back to the trust for the benefit of the remaining beneficiaries. Once the trustee of the trust had knowledge of Guerriero's "irrevocable waiver," the trustee was deprived of any legal discretion to pay trust principal to Guerriero. Restatement (Second) of Trusts, *supra* at §§ 210 comment d & 226 comment c. See *Security Bank of N.Y.* v. *Callahan*, *supra* at 89.[8] Moreover, once the trustee had knowledge of the "irrevocable waiver," under the terms of the trust instrument there were no remaining circumstances in which the trustee retained discretion to pay out principal to Guerriero because (1) the trust is irrevocable, (2) Guerriero waived any right to amend or alter the trust, and (3) the trust instrument does not give the trustee any power to modify the terms of the trust.[9]

Although the amendments are not directly applicable because

[7]Section 132 provides: "Except as stated in § 133 and §§ 149-162 [the sections on restraint on alienation], the beneficiary of a trust has power to transfer his interest." *Id.* at 288.

[8]The parties have not raised any issue concerning the trustee's notice of the transfer.

[9]Guerriero's transfer of her equitable interest distinguishes this case from *Lebow* v. *Commissioner of the Div. of Med. Assistance*, *ante* 171, 176

of the time period, they confirm our resolution of the matter. Any doubts about whether a MQT beneficiary could deprive a trustee of discretion to pay (and thereby dispose of) trust interests by means other than modification of the trust instrument itself were resolved by the enactment of 42 U.S.C.A. § 1396p(d)(3)(B). This section excludes "any portion of the trust from which, or any income on the corpus from which, no payment could under any circumstances be made to the individual." 42 U.S.C.A. § 1396p(d)(3)(B)(ii) (West Supp. 2000). If the trust had been created after the enactment of the 1993 amendments, the "irrevocable waiver" undoubtably would have resulted in excluding the trust assets as the Superior Court concluded. *Id.* The fact that there was no provision in this statute prior to 1993 addressing such a disposal of trust assets does not mean that such a transfer was not a legitimate means of disposing of trust assets prior to that time.[10]

The division contends that we should ignore Guerriero's "irrevocable waiver" because the trust instrument does not authorize Guerriero "to relinquish her interest in the trust assets." This contention, however, ignores Guerriero's dual role as settlor and as beneficiary. Although Guerriero expressly waived her right as settlor to "alter, amend, revoke or terminate this Trust," as a *beneficiary* Guerriero had the right to transfer her interest absent a limitation in the trust instrument.[11] Guerriero's waiver of rights as a settlor did not waive her right to transfer her interest as a beneficiary. Accordingly, we conclude

(2001), where there remained at least one condition (i.e., an amendment to the terms of the trust) under which the trustee could exercise discretion to make payments to the Medicaid applicant, even though the applicant's co-beneficiary "irrevocably" withdrew consent pursuant to the trust instrument, thereby restricting the trustee from distributing trust assets to the applicant. There is no power to amend the trust in this case.

[10]Even though Guerriero's waiver is subject to § 1396p(c)(1)'s earlier thirty-month look-back period, she is not subject to any period of ineligibility because she executed her waiver approximately seven years prior to her application for benefits.

[11]Although the trust instrument contains a spendthrift clause, art. VII, both parties agree that this clause would not affect Guerriero's ability (as beneficiary) to transfer her equitable interest back to the trust. Cf. *Merchants Nat'l Bank* v. *Morrissey*, 329 Mass. 601, 605 (1953) (under Massachusetts law, where settlor is also beneficiary of trust, she cannot keep property beyond reach of creditors by placing it in a spendthrift trust for her own benefit).

that Guerriero had the capacity to make a voluntary transfer of her equitable interest in the principal by irrevocably waiving that interest in favor of the remaining beneficiaries.

The division contends that Guerriero's "irrevocable waiver" should be disregarded because the waiver is a mere limitation on trustee discretion analogous to the limitations we reviewed in the *Cohen* case where we considered trust instruments with written provisions purporting to *limit* the trustee's discretion to make payments to an amount less than would disqualify the beneficiary for Medicaid benefits. *Cohen* v. *Commissioner of the Div. of Med. Assistance, supra* at 407. Although we concluded in *Cohen* the limitations on discretion should be disregarded, we noted that "[i]t is true that a trust might be written to deprive the trustee of any discretion (for instance allowing the payment only of income) and that such a limitation would be respected." *Id.* at 418. The present situation conforms to that observation because Guerriero's execution of the "irrevocable waiver" did not merely "limit" the trustee's discretion, rather it deprived the trustee of *any* legal discretion to pay Guerriero any part of the trust principal.[12]

The judgment of the Superior Court is affirmed.

*So ordered.*

---

[12]Cf. *Lebow* v. *Commissioner of the Div. of Med. Assistance, supra* at 174, 176 (although consent requirement in trust instrument limited trustee's discretion, it did not completely deprive trustee of discretion because the co-beneficiary, who was also trustee, held power to modify the terms of the trust).