MURIEL DOHERTY vs. DIRECTOR OF THE OFFICE OF MEDICAID.

No. 08-P-939.

Essex. March 4, 2009. - June 18, 2009.

Present: COHEN, BROWN, & WOLOHOJIAN, JJ.

*Medicaid. Trust,* Irrevocable trust, Self-settled trust, Distribution, Trustee's discretion.

A trial court judge correctly concluded that the terms of a self-settled irrevocable trust, considered as a whole, allowed the trustees, in at least certain circumstances, to distribute trust assets to or for the benefit of the settlor, thereby rendering the settlor ineligible for Medicaid benefits. [440-443]

CIVIL ACTION commenced in the Superior Court Department on February 9, 2007.

The case was heard by *Richard E. Welch, III,* J., on motions for summary judgment.

*Peter J. Caruso* for the plaintiff.

*Timothy J. Casey,* Assistant Attorney General, for the defendant.

BROWN, J. We are once again called upon to resolve the conflict between the Legislature's explicit direction that Medicaid benefits be made available only "to people who do not have sufficient income or resources to provide for themselves," *Cohen* v. *Commissioner of the Div. of Med. Assistance,* 423 Mass. 399, 404 (1996), cert. denied sub nom. *Kokoska, by Kokoska* v. *Bullen,* 519 U.S. 1057 (1997), quoting from H.R. Rep. No. 265, 99th Cong., 1st Sess., pt. 1, at 72 (1985), and the desire of "persons with some means, perhaps even considerable means, to preserve their assets in the face of the large medical expenses faced . . . by elderly persons." *Id.* at 402.

Approximately six months after entering a nursing home in December, 2005, Muriel Doherty (Muriel) applied for MassHealth

Medicaid benefits. MassHealth denied Muriel's application, reasoning that Muriel had available to her assets far exceeding the modest $2,000 allowable under applicable law. See 130 Code Mass. Regs. § 520.003(A)(1) (2004). Muriel disagrees, contending that, because her assets are held by an irrevocable trust, she is essentially indigent and eligible for public benefits.

Muriel amended and restated an existing family trust,[1] declaring that trust to be irrevocable and herself to be the trust's sole settlor. Muriel also removed herself as trustee, directing her nephew and niece, the successor trustees, to distribute the trust's income to her. Muriel specified that under no conditions were the successor trustees to "make . . . distributions of principal from the Trust, to [Muriel] or on behalf of [Muriel]."

The history and legal framework governing Medicaid eligibility has been the subject of considerable discussion.[2] For present purposes, it suffices to observe that Muriel's trust, being restated in 2000, is subject to the post-1993 statutory-regulatory scheme. In such circumstances as those presented here, MassHealth's task was to determine whether "[a]ny portion of the principal" held by Muriel's trust could "under any circumstances" be paid "to or for [Muriel's] benefit." 130 Code Mass. Regs. § 520.023(C)(1) (1999).[3] See also 42 U.S.C. § 1396p(d)(3)(B) (1993).[4] As previously noted, MassHealth concluded that, in at least certain circumstances, the trust instrument allowed Muriel's trustees to distribute trust assets to Muriel or for her benefit, thereby rendering Muriel ineligible to receive Medicaid benefits.

At first blush, MassHealth's conclusion seems a bit odd insofar

---

[1]At the time, her trust held assets of about $630,000 and was each year paying to Muriel income of about $27,000.

[2]See, e.g., *Cohen*, 423 Mass. at 401-407. See also *Lebow* v. *Commissioner of the Div. of Med. Assistance*, 433 Mass. 171, 172-173 (2001); *Guerriero* v. *Commissioner of the Div. of Med. Assistance*, 433 Mass. 628, 629-632 (2001).

[3]We need not determine whether trust income paid to Muriel constitutes "countable income" within the meaning of 130 Code Mass. Regs. § 520.009, as Muriel concedes that it does. At least for present purposes, MassHealth does not argue that such income renders Muriel ineligible to receive Medicaid benefits.

[4]"In the case of an irrevocable trust — (i) if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual, the portion of the corpus from which . . . payment to the individual could be made shall be considered resources available to the individual."

as trust Art. V.A.2 explicitly provides, as noted, that the trustee may "make no distributions of principal from the Trust, to or on behalf of" Muriel. But as MassHealth strongly presses upon us, this clause may not be read in isolation; rather, it must be construed and qualified in light of the trust instrument as a whole. See *Harrison* v. *Marcus*, 396 Mass. 424, 429 (1985). Taking this maxim to heart, we observe that trust Art. XXII generally provides that the trustee may, "in its sole discretion" and notwithstanding "anything contained in this Trust Agreement" to the contrary, "pay over and distribute the entire principal of [the] Trust fund to the beneficiaries thereof, free of all trusts," so long as the trustees, "in [their] sole judgment," determine that the "fund created . . . shall at any time be of a size which . . . shall make it inadvisable or unnecessary to continue such Trust fund." Similarly, trust Art. XIV.H gives to the trustee the power to "determine all questions as between income and principal and to credit or charge to income or principal or to apportion between them any receipt or gain . . . notwithstanding any statute or rule of law for distinguishing income from principal or any determination of the Courts."[5]

Again, in trust Art. II, Muriel directed the trustee to "accumulate the Trust principal to the extent feasible, due to the unforeseeability of" Muriel's "future needs" and "without regard to the interests of the remaindermen." The trust also specifically provides that Muriel retains at least some powers over the trust corpus, including, as provided in Art. IV, the power to "appoint any part or all of the principal of the Trust fund to any one or more of" Muriel's descendants or siblings. Similarly, in trust Art. V.C, Muriel retained the right to reside in her home, originally a part of the trust's corpus, during her lifetime, also retaining an effective veto power over any potential sale.

Muriel argues, with some persuasiveness, that these and other similar provisions are, at most, economically meaningless administrative boilerplate, that in light of the explicit provision to the contrary they do not confer upon the trustees any discretionary

---

[5]Compare with trust Art. V.A: "During [Muriel's] lifetime, [Muriel's] rights with respect to the income and principal of the Trust shall be as follows: (1) the TRUSTEE shall pay the entire net income from the [trust] to or for the benefit of [Muriel], in quarterly or more frequent installments, during her lifetime."

authority to invade principal for Muriel's benefit. To some extent, this is so. We doubt, for example, that the trustees may, willy-nilly, simply characterize a trust asset as "income" and thereby, free of fiduciary fault, convey that asset to Muriel free of trust. See and compare *Worcester County Natl. Bank* v. *King*, 359 Mass. 231, 233-234 (1971).

Yet we remain unconvinced that Muriel's niece and nephew are unable, in any reasonably foreseeable circumstance, to invade trust assets for Muriel's benefit. When considered as a whole, what strikes us most strongly is that Muriel's trust constitutes a remarkably fluid legal vehicle, intelligently structured to provide both Muriel and the trustees maximum flexibility to respond to Muriel's changing life needs. Indeed, embedded in the trust's governing recitation is not only an explicit assessment that public or other charitable benefits will likely be insufficient to provide Muriel the quality of life she might desire, but the corollary implicit direction for the trustees, in such case, to invade assets to make up that difference. Which is not to say that specific trust provisions do not confer this authority,[6] but is rather simply to observe that the trust vehicle, considered as a whole, evidences Muriel's expectation or intent that the trustees will invade trust assets when necessary to ensure Muriel's comfort. In this light, we cannot say that MassHealth's determination — that the whole of the trust's corpus constitutes a "countable asset" for the purpose of determining Muriel's Medicaid eligibility — is as matter of law infirm. We leave for another day Muriel's remaining arguments.

Finally, we take this opportunity to stress that we have no doubt that self-settled, irrevocable trusts may, if so structured, so insulate trust assets that those assets will be deemed unavailable

---

[6]As the motion judge observed, for example, trust Art. XXII, quoted at greater length above, confers upon the trustees authority to distribute the trust's assets whenever, in their sole discretion and notwithstanding "anything contained in this Trust Agreement . . . to the contrary," they deem it "inadvisable or unnecessary to continue such Trust fund." Contrary to Muriel's urging, we do not read the phrase "distribute the entire principal of such Trust fund to the beneficiaries thereof" as limiting the class of beneficiaries entitled to receive principal to the trust's "principal beneficiaries." The trust establishes no such beneficiary class. In any case, and as we read the phrase, "beneficiaries thereof" modifies "Trust fund," not "principal," thus allowing distributions to the Trust fund's beneficiaries, of whom Muriel is one.

to the settlor. See and compare *Guerriero* v. *Commissioner of the Div. of Med. Assistance*, 433 Mass. 628, 633 (2001). Neither do we question Muriel's bona fides. To the contrary, Muriel's trust is a carefully crafted, entirely appropriate estate planning device. But neither the trust's validity nor her good intentions determine the present question. In our view, Muriel's trust, as structured, allows the trustees a degree of discretionary authority that would, if sanctioned, permit Muriel to enjoy her assets, preserve those assets for her heirs, and receive public assistance, to, in effect, "have [her] cake and eat it too." *Cohen*, 423 Mass. at 403. Congress has declared a contrary intent, that Medicaid benefits be made available only to those who genuinely lack sufficient resources to provide for themselves. We perceive no reason in this case to deviate from that mandate.

*Judgment affirmed.*