Ullmann, Robert L., J.
A reformed trust can turn back the clock on certain legal decisions. However, it cannot resurrect the departed. Armed with a newly reformed trust instrument, plaintiffs have asked the Commonwealth’s Executive Office of Health and Human Services (“EOHHS”) to reconsider its 2006 denial of Medicaid benefits to their deceased aunt, and reimburse them nearly $400,000 that their aunt paid to a nursing home. For reasons explained below, plaintiffs far-too-clever effort to obtain Medicaid funds must be denied, as they lack standing to apply for benefits.
Background
In 1981, Muriel S. Doherty (“Doherty”) and her husband established the William A. Doherty and Muriel S. Doherty Family Trust. On April 12, 2000, after her husband’s death, Doherty amended and restated *370 the trust .and changed its name to the Muriel S. Doherty Irrevocable Family Trust (the ‘Trust”).
In 2006, after moving into a North Andover nursing home, Doherty applied to EOHHS for Medicaid benefits, which EOHHS provides through the MassHealth program. EOHHS denied the application on the grounds that Doherty’s assets, which included the Trust, far exceeded the maximum allowable in order to qualify for benefits. Doherty appealed EOHHS’s ruling, which ultimately resulted in an Appeals Court decision upholding the agency’s decision. Doherty v. Director of the Office of Medicaid, 74 Mass.App.Ct. 439 (2009). The Appeals Court described the case as an example of:
the conflict between the Legislature’s explicit direction that Medicaid benefits be made available only to people who do not have sufficient income or resources to provide for themselves . . . and the desire of persons with some means, perhaps even considerable means, to preserve their assets in the face of the large medical expenses faced ... by elderly persons.
74 Mass.App.Ct. at 439. The Appeals Court held that EOHHS had lawful grounds to include the Trust’s principal as Doherly assets because the Trust instrument allowed Doherty’s trustees to distribute the trust principal to her under some circumstances. Id. at 442. The Court observed that Doherty’s argument would permit her to “enjoy her assets, preserve those assets for her heirs, and receive public assistance, to, in effect, ‘have [her] cake and eat it too.’ ” Id. at 443, quoting Cohen v. Commissioner of the Div. of Med. Assistance, 423 Mass. 399, 403 (1996), cert, denied sub nom. Kokoska by Kokoska v. Bullen, 519 U.S. 1057 (1997) (additional citation omitted).
As one consequence of EOHHS’s denial of benefits, Doherty paid $382,592.98 to the North Andover nursing home between late 2005 and the time of her death, which occurred in July 2010.
In November 2010, plaintiffs, the co-trustees and sole beneficiaries of the Trust, filed a complaint in Probate & Family Court seeking to reform the Trust (the “Probate Case”). The sole defendants in the Probate Case were plaintiffs, in their individual capacities. Plaintiffs alleged that Doherty had intended that the trustees have no discretionaiy authority to distribute trust principal to her under any circumstances, and that any contrary language in the Trust was a “scrivener’s error.”
Plaintiffs moved for summary judgment in the Probate Case in April 2011. A hearing was held on May 4, 2011 before Judge Mary. McCauley Manzi. Two weeks later, Judge Manzi denied the requested relief, based on the prior Appeals Court decision.[1] In October 2011, plaintiffs moved for reconsideration of Judge Manzi’s ruling, arguing that the Appeals Court decision should not have a res judicata effect on the Probate case. On November 9, 2011, plaintiffs motion for reconsideration was denied.
Thereafter, on January 17, 2012, plaintiffs filed a Stipulation of Judgment for reformation of the Trust in the Probate Case. The sole parties to the stipulation were the plaintiffs as co-trustees of the Trust and the plaintiffs in their individual capacities. That same day, a second Probate & Family Court judge entered a Judgment reforming the Trust ab initio as of April 12, 2000 (the “Judgment”), thereby establishing a new trust instrument (the “Reformed Trust”). Plaintiffs acknowledged at the hearing on the motion before this Court that, in entering judgment, the probate court judge did not address any intended use of the Reformed Trust in a future proceeding.
In November 2012, plaintiffs presented the Reformed Trust to EOHHS, demanding that EOHHS reconsider its 2006 denial of benefits to Doherly under the Reformed Trust and pay them the full amount of money that Doherty had paid to the North Andover nursing home. EOHHS refused to consider plaintiffs’ application for benefits. In December 2012, defendant informed plaintiffs that the Reformed Trust did not provide grounds to reopen its 2006 eligibility determination, and that “a probate action allowing the reformation of a trust is not binding on the MassHealth Agency or its eligibility determination.”
In response, plaintiffs filed the pending lawsuit, seeking a declaration from this Court that MassHealth must recognize the Judgment, reconsider Doherty’s request for benefits under the Reformed Trust, and render a decision. Defendant moved to dismiss the Complaint under Mass.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, on the dual grounds that plaintiffs lack standing and that there is no actual controversy. The Court held a hearing on July 23, 2013.
Legal Analysis
Defendant argues that plaintiffs’ complaint must be dismissed pursuant to Mass.R.Civ.P. 12(b)(1) because there is no actual controversy and because plaintiffs lack standing to sue EOHHS. The Court holds that plaintiffs lack standing to sue EOHHS over the 2006 denial of benefits to Doherly, and does not address the actual controversy argument. As discussed below, plaintiffs’ argument has a fatal Achilles Heel, which is that the MassHealth Medicaid program exists to provide health benefits to indigent persons, not to enrich heirs who concededly do not qualify for benefits.
The Supreme Judicial Court has made clear that “[a] party has standing when it can allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred.” Enos v. Secretary of Environmental Affairs, 432 Mass. 132, 135 (2000) (property owners lack standing to challenge agency’s decision concerning town’s plans to build sewage treatment facility). See also Ineck Maine Energy, LLC v. Commissioner of *371 Energy Resources, 454 Mass. 511, 517 (2009) (owners of competing renewable energy facilities have.no standing to challenge agency decision allowing other facilities to participate in agency program); Northbridge v. Natick; Department of Social Services, 394 Mass. 70, 75 (1985) (town could not rely on language in interagency agreement regarding payment of costs for special education services because agencies “entered into the agreement in order to facilitate delivery of services to special needs children in their custody and to allocate costs among themselves, not to aid local education authorities”). In addition, in lawsuits against a public entity, the Supreme Judicial Court has stated that it pays “special attention to the requirement that standing usually is not present unless the governmental official or agency can be found to owe a duty directly to the plaintiffs.” Enos, 432 Mass, at 136; see also Northbridge, 394 Mass, at 75 (“An injury alone is not enough; a plaintiff must allege a breach of a duty owed to it by the public defendant”).
Chapter 118E of the General Laws and Chapter 130 of the Code of Regulations clearly define the “area of concern” of the Commonwealth’s MassHealth Medicaid program. The statute provides that “Medicaid benefits shall be available to all persons eligible for financial assistance” under applicable federal and state law. G.L.c. 118E, Sec. 9 (emphasis added). The regulations are even more explicit:
The MassHealth agency is responsible for the administration and delivery of health-care services to eligible low-and moderate-income individuals, couples, and families under MassHealth.
130 Code Mass. Regs., Sec. 501.002(A). For purposes of eligibility, the regulations specifically provide that individuals who have more than $2,000 in assets do not qualify for Medicaid benefits, 130 Code Mass. Regs., Sec. 520.003(A)(1), and that the principal of a trust should be counted if “under any circumstances” it can be paid to or for the individual’s benefit. Id., Sec. 520.023(C)(1).[2]
At the time Doherty applied for benefits in 2006, the Trust held assets of about $630,000 and was paying her income each year of about $27,000. See Doherty, 74 Mass.App.Ct. at 440, n.l. The Appeals Court described the Trust as a “remarkably fluid legal vehicle” that gave the trustees discretionary authority to distribute the trust’s principal to Doherfy under certain circumstances. Id. at 442. Not surprisingly, the Appeals Court upheld EOHHS’s decision not to award Medicaid benefits to Doherty, affirming the Superior Court’s ruling.
Plaintiffs do not allege that they have less than $2,000 in total assets, or that they otherwise qualify for benefits under the MassHealth program. Nor have plaintiffs identified any provision within the Medicaid statutes and regulations that allows an heir or the executor of an individual’s estate to apply for benefits, and the Court has found no such provisions.
It is simple common sense that the Legislature did not intend to give a Medicaid claimant’s non-indigent heirs the right to tap into the Medicaid fund through the legal tactic of reforming trust documents after the claimant has died. Indeed, it is interesting to note that the statute contemplates repayment of benefits to EOHHS by a claimant’s heirs, estate or legal representative under certain circumstances. See G.L.c. 118E, Sec. 22(b), (e) and (f). Therefore, the common-sense view of plaintiffs’ claim is supported by the principle of statutory construction that, where the Legislature specifically addresses an issue in one section of a statute, its silence on the issue elsewhere should be given meaning. See, e.g., Bay Colony Marketing Co., Inc. v. Fruit Salad, Inc., 41 Mass.App.Ct. 662, 666 (1996). Because the Legislature specifically considered heirs in the section of the statute on repayment of benefits, its silence about heirs with regard to applications for benefits provides further support for EOHHS’s position.
In light of the above-described statutory and regulatory provisions, plaintiffs cannot plausibly claim that their interest in recovering from EOHHS the amount of money that their deceased aunt paid to a nursing home falls “within the area of concern” of the state’s Medicaid law. Moreover, this Court may also consider “any adverse effects that might occur, if standing is recognized.” Enos, 432 Mass, at 135-36. Allowing the heirs of deceased claimants to obtain Medicaid funds by reforming decedents’ trust documents could have disastrous results, decimating the Medicaid program and putting large amounts of public money into the hands of those who need it least. EOHHS was correct in concluding that it should not be required to consider an application for benefits submitted by concededly ineligible persons on behalf of a deceased claimant.
Although plaintiffs’ lack of standing resolves the pending motion, the Court believes that two aspects of the Reformed Trust warrant further discussion, for the benefit of the parties and future litigants. First, plaintiffs wrongly paint EOHHS’s decision as an agency refusal to recognize the power of the Probate Court to reform a trust. Opposition To Defendant’s Motion To Dismiss at 2. This argument misses the point that the plaintiffs, not Doherty, have applied for benefits. Second, this Court questions plaintiffs’ claim that the Trust language was a “scrivener’s error.” As of 2006, Doherty knew that EOHHS did not consider her to be indigent under the Trust language as written, and yet Doherty chose not to reform the Trust during her lifetime. Presumably she valued the ability to receive trust principal under certain circumstances over poverty and the protection of her assets for the benefit of her heirs. The Court is skeptical of plaintiffs argument, made only after Doherty’s death, that their aunt’s decision not to reform the Trust during her *372 lifetime was a based on a misunderstanding on her part.
At the hearing, plaintiffs clarified that they are not currently asking the Court to rule on the merits of their application for benefits. Instead, they want the Court to order EOHHS to consider their application, so that they have an agency decision to appeal. Plaintiffs now have both an agency decision not to consider their application for benefits and an appealable ruling by this Court.
Conclusion
For the above reasons, defendant’s Motion to Dismiss for Lack of Subject Matter Jurisdiction (No. 5) is ALLOWED.

The Court has reviewed the entire Probate Court file, taking judicial notice of its contents, which it has authority to do. See, e.g., Commonwealth v. Taylor, 69 Mass.App.Ct. 526, 530 n.7 (2007). Plaintiffs fail to mention this ruling in their pleadings. While this Probate Court ruling does not directly impact the Court’s decision on standing, it provides useful background.

hese provisions were in effect at the time EEOHS denied Doherty’s application for Medicaid benefits in 2006.