NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

15-P-166                                          Appeals Court

EILEEN M. HEYN, personal representative,[1] vs.  DIRECTOR OF THE OFFICE OF MEDICAID.

No. 15-P-166.

Worcester.      February 5, 2016. - April 15, 2016.

Present:  Green, Hanlon, & Henry, JJ.


Medicaid.  Trust, Self-settled trust, Irrevocable trust, Distribution, Allocation of payments between principal and income, Power of appointment.  Annuity.



Civil action commenced in the Superior Court Department on December 12, 2013.

The case was heard by William F. Sullivan, J., on a motion for judgment on the pleadings.


Patrick Tinsley for the plaintiff.
Daniel J. Hammond, Assistant Attorney General, for the defendant.
Patricia Keane Martin, Robert P. Ford, Kathryn E. Szewczyk, & Don J.J. Cordell, for National Academy of Elder Law Attorneys (Massachusetts Chapter), amicus curiae, submitted a brief.


GREEN, J.  We are called upon yet again to review a

determination that assets within a self-settled irrevocable

---

[1] Of the estate of Everlenna Roche.

inter vivos trust should be treated as available to the trust grantor for payment of nursing home expenses (and, correspondingly, render the grantor ineligible for Medicaid benefits). We conclude that a hearing officer of the MassHealth board of hearings erroneously concluded that the trust at issue permitted its trustee to distribute proceeds from the sale of trust assets to the grantor in certain circumstances. Consequently, we reverse the judgment of the Superior Court affirming MassHealth's termination of benefits to the plaintiff's decedent.[2]

Background. From November 4, 2011, until her death on August 25, 2013, the plaintiff's decedent, Everlenna Roche, resided at a skilled nursing facility in Westborough. Approximately eight and one-half years earlier, Roche had established the Everlenna R. Roche Irrevocable Trust (trust), and transferred to it title to her home at 10 Baker Way, Westborough, retaining a life estate.[3] Upon moving into the

---

[2] We acknowledge the amicus brief submitted by the National Academy of Elder Law Attorneys, Inc. (Massachusetts chapter).

[3] The defendant makes no argument that the life estate retained by Roche might itself have a value that could affect her eligibility for benefits, stating in its brief that it is "a correct statement of the law under Cohen [v. Commissioner of the Div. of Med. Assistance, 423 Mass. 399 (1996), cert. denied sub nom. Kokoska, by Kokoska v. Bullen, 519 U.S. 1057 (1997),] and its progeny" that retention of a life estate does not render an individual ineligible for benefits. We do not consider the question.

skilled nursing facility, Roche applied for MassHealth benefits to pay for the cost of her care, and her application was initially approved.  On March 27, 2013, MassHealth notified Roche that her eligibility for MassHealth benefits was terminated, based on its conclusion that her former residence, held by the trust, should be treated as a countable asset with a value in excess of the maximum asset value permissible to retain eligibility.[4]  Roche timely appealed the termination of her benefits, and a hearing was held on June 20, 2013.  On October 8, 2013, following her intervening death in August of that year, a decision on her appeal issued, upholding the termination of benefits.  In the decision, the hearing officer reasoned that the trust instrument authorized the trustee to sell trust assets, and to invest the proceeds of any such sale in other forms of investment, including an annuity.[5]  Since the trust also authorized the trustee to make distributions of income to Roche, the hearing officer concluded that annuity payments resulting from any annuity purchased by the trustee with trust principal

---

[4] According to the notice, the value of the property was $214,423, based on the then most recent assessment for the property.  Under 130 Code Mass. Regs. § 520.016(A) (2010), if "countable assets" available to an institutionalized single applicant exceed $2,000, the applicant is ineligible for Medicaid benefits.  The plaintiff does not dispute on appeal the value assigned to the property in the MassHealth notice.

[5] We reserve detailed discussion of the trust provisions for our discussion below.

could be distributed from the trust as income, and thereby be made available to provide support to Roche. After denial of the plaintiff's motion for rehearing, the plaintiff appealed the decision to the Superior Court pursuant to G. L. c. 30A, § 14, where a judge of that court denied the plaintiff's motion for judgment on the pleadings and affirmed the administrative decision. This appeal followed.

Discussion. As intimated in our introduction, the effect of the provisions of self-settled irrevocable inter vivos trusts on eligibility for Medicaid benefits has been the subject of considerable discussion. See, e.g., Cohen v. Commissioner of the Div. of Med. Assistance, 423 Mass. 399, 401-407 (1996), cert. denied sub nom. Kokoska, by Kokoska v. Bullen, 519 U.S. 1057 (1997). See also Lebow v. Commissioner of the Div. of Med. Assistance, 433 Mass. 171, 172-173 (2001); Guerriero v. Commissioner of the Div. of Med. Assistance, 433 Mass. 628, 629-632 (2001); Doherty v. Director of the Office of Medicaid, 74 Mass. App. Ct. 439, 440-443 (2009). The legislative history and case law concerning the treatment of self-settled trusts reflect awareness of the possibility that comparatively affluent individuals might avail themselves of such trusts as an estate planning tool, in order to qualify for benefits. See Cohen, supra at 403-404. The resulting law reflects a compromise, with provisions for so-called "look back" periods for transfers of

assets preceding an application for benefits, see 42 U.S.C.
§ 1396p(c)(1)(B)(i) (2012),[6] and strict requirements governing
the extent to which assets must be made unavailable to the
settlor in order to avoid being treated as "countable assets"
for purposes of Medicaid eligibility.  Nonetheless, it is
settled that, properly structured, such trusts may be used to
place assets beyond the settlor's reach and without adverse
effect on the settlor's Medicaid eligibility.  See, e.g.,
Guerriero, supra at 633.  See also Doherty, supra at 442-443.

Like the trust at issue in Doherty, supra at 440, and
unlike the trusts in Cohen, supra at 408 n.15, Lebow, supra at
172 n.2, and Guerriero, supra at 631, the trust in the present
case is governed by the provisions of the statutory and
regulatory framework in effect after 1993, following amendments
to 42 U.S.C. § 1396p(d)(3)(B).  Under the post-1993 version of
the statute, for purposes of determining eligibility for
Medicaid benefits, "countable assets" include any portion of the
trust principal that could "under any circumstances" be paid "to
or for [the] benefit [of]" Roche.[7]  Doherty, supra.  Such

_____

[6] Under that section, a thirty-six month "look back" period
applies to transfers of assets prior to any application for
benefits, and a longer, sixty-month, "look-back" period applies
to assets placed into trust.  See Guerriero, supra at 631.

[7] The "any circumstances" test replaced the former
"peppercorn of discretion" test, which previously considered
whether the trustee of an irrevocable trust could, in the

circumstances need not have occurred, or even be imminent, in order for the principal to be treated as "countable assets"; it is enough that the amount could be made available to Roche under any circumstances.  See Lebow, supra at 177-178.

In assessing whether the trust would allow distribution of principal to Roche "under any circumstances," we construe its provisions in light of the trust instrument as a whole.  See Doherty, supra at 441.  With that principle in mind, we examine the provisions of the trust that bear on the question.  Article SECOND mandates quarterly distribution of trust income to the grantor for the remainder of her life.  It also allows the trustee to distribute part or all of the trust principal to persons other than the grantor who are entitled to receive trust assets after the death of the grantor.  Finally, it contains a reservation to the grantor of the power during her lifetime to "appoint any part or all of the principal or income of th[e t]rust to any one or more of the [g]rantor's issue, free of trust."[8]

---

exercise of discretion, distribute principal to the person seeking benefits, regardless whether such discretion was exercised in fact to make a distribution.  See Cohen, supra at 413 & n.20.  Though the motion judge framed his analysis by reference to the "peppercorn of discretion" test, the difference is immaterial to the result in this case.

[8] Article SECOND reads as follows:

Separately, Art. EIGHTH grants broad authority to the trustee to deal with trust assets, including the rights to sell assets and invest the proceeds of such a sale in another form of asset, and "to determine, in accordance with reasonable accounting principles and practice and state law, what shall belong and be chargeable to principal and what shall belong and be chargeable to income."[9]  Finally, Art. NINTH includes a

---

"SECOND:  A.  The Trustee shall pay to the Grantor all of the net income of the Trust, quarterly or more often, for the remainder of the Grantor's life.

"B.  During the life of the Grantor the Trustee may distribute part or all of the principal of this Trust to any persons (other than the Grantor) otherwise entitled to the assets of this Trust after the death of the Grantor.

"C.  The Grantor reserves the power, exercisable at any time or from time to time, by written instrument during the Grantor's lifetime or by the Grantor's will or any codicil thereto, to appoint any part or all of the principal or income of this Trust to any one or more of the Grantor's issue, free of trust of [sic] otherwise, referring specifically to this special power of appointment in such written instrument, will, and/or codicil."

[9] Pertinent provisions of Art. EIGHTH include the following:

"EIGHTH:  In addition to the other powers given to the Trustee in this Trust Agreement or by law, the Trustee shall have the following powers in each case to be exercised in his, her or its sole discretion, upon such terms as he, she or it deems advisable and without leave of any court:

"A.  to make and retain any investment, without notice to or consent of any interested party, including, without limiting the generality of the foregoing, the purchase, sale or writing of put or call options relating to any security or index, the purchase or sale of commodities (or

provision entitling the grantor to require the trustee to "transfer any trust assets in exchange for assets of equivalent value," and provides that such power would be "exercisable [by the grantor] solely in a nonfiduciary capacity," free from restriction by any fiduciary duty imposed on the trustee.[10]

---

options thereon), the purchase or sale of domestic and foreign currencies and the purchase and sale of marketable and non-marketable securities including interests in limited partnerships of all types, although any of the investments so made or retained may be of such kind or in such amount or proportion that they would not otherwise be proper;

. . .

"O.  to determine, in accordance with reasonable accounting principles and practice and state law, what shall belong and be chargeable to principal and what shall belong and be chargeable to income, and without limitation to make such determination in regard to stock and cash dividends, rights and other receipts in respect to the ownership of stock, to purchase or retain stock that pays dividends in whole or in part otherwise than in cash and to treat such dividends in whole or in part as principal or income and to amortize or to refrain from amortizing bond premiums[.]"

[10] Article NINTH is as follows:

"NINTH:  The Grantor intends that this trust be a grantor trust for federal income tax purposes and all provisions of this trust shall be construed so as to effectuate this intent.

"A.  Upon the demand by EVERLENNA R. ROCHE, the Trustee shall transfer any trust assets in exchange for assets of equivalent value.  This power is exercisable by EVERLENNA R. ROCHE solely in a nonfiduciary capacity, and no fiduciary duty imposed upon the Trustee of any other person may be asserted as a defense to the exercise of the powers granted under this Article.

As we have observed, the hearing officer concluded that the trust authorized distributions of principal to Roche under identifiable circumstances.  In particular, pertinent to this appeal the hearing officer suggested that the trustee could sell the property, invest the proceeds in an annuity, and then treat the resulting annuity payments as income eligible for distribution.  The analysis misapprehends the nature of annuity payments.  Annuity payments are comprised of distinct constituent parts.  One part is a return of a portion of the principal investment in the annuity itself; the other part is a portion of the investment income earned on the principal investment.  Following each payment, the remainder of the principal investment remains in the annuity contract, accruing income.  Federal Medicaid law recognizes these distinguishable parts, as does the United States Internal Revenue Code.  See, e.g., 42 U.S.C. § 1396p(e)(2)(B) (2012) (distinguishing between the amount of an annuity's "income or principal" being withdrawn); 26 U.S.C. § 72(a) & (b) (2012).  Out of each annuity payment, only the investment income portion would be available

---

"B.  EVERLENNA R. ROCHE may waive this power by a writing delivered to a Trustee, and such waiver shall bind EVERLENNA R. ROCHE, the Trustee, and all other persons."

for distribution to the grantor from the trust;[11] that portion of each payment representing a return of capital would be required by the trust instrument to be retained in the trust.  The income portion available for distribution in such circumstances would be no different in character than interest earned on a certificate of deposit, dividends from stocks purchased and held by the trust, or other income earned on any trust assets.  In all events, the trust principal is preserved in the trust, and is not available for distribution to the grantor under the governing provisions of the trust.[12]

The foregoing analysis is unaffected by the authority of the trustee, provided by Art. EIGHTH O., and noted by the motion judge, to determine the allocation as between principal and income of any proceeds of trust assets, because the trustee's authority in that respect is expressly constrained by "reasonable accounting principles and practice and state law" (emphasis added).  See note 9, supra.  In particular, the allocation of annuity payments as between principal and income is governed by G. L. c. 203D, § 18(a), which creates a statutory

---

[11] The effect of income distributions on Medicaid eligibility is considered as and when the income is available for distribution, and is not at issue in this case.

[12] As noted above, see note 8, supra, principal could be distributed to beneficiaries other than the grantor.  However, any such distribution would not be available to the grantor, and therefore would not affect the grantor's Medicaid eligibility.

presumption that any amount received by the trust, not expressly characterized as dividend or interest income, shall be allocated to principal.  See also Restatement (Third) of Trusts § 110 (2011).

The hearing officer articulated two alternative grounds on which to rest a conclusion that the trust corpus could be made available for distribution to the grantor.  First, he noted that Art. SECOND C. allows the grantor to appoint all or any part of the trust principal to any one or more of the grantor's issue, free of trust.  See note 8, supra.  In the view of the hearing officer, that would give rise to the possibility that the grantor could direct conveyance of the trust property to one of her children, who could in turn convey it to her.  Second, the hearing officer found that Art. NINTH A. allows Roche to compel the trustee to return her former residence to her in exchange for assets of equivalent value.  See note 10, supra.  The motion judge did not rely on either ground in his order affirming the hearing officer's decision, and the defendant does not rely on either rationale to defend the judgment in this appeal.  In any event, we offer the following brief comment on both arguments. The hearing officer cited no case in which either rationale was applied to support a conclusion that assets held in an irrevocable trust should be treated as countable assets for purposes of the trust grantor's Medicaid eligibility, and we are

aware of none. As to the first rationale, a provision making trust principal available to persons other than the grantor does not by its nature make it available to the grantor, any more than if the grantor had gifted the same property to such a person when she created the trust, rather than placing it in trust. Indeed, the continuing authority of the trustee in Guerriero to distribute trust principal to beneficiaries other than Guerriero following Guerriero's irrevocable waiver of rights to receive principal did not derogate from the court's conclusion that the trust principal should not be treated as countable assets for purposes of determining Guerriero's eligibility for Medicaid benefits. See 433 Mass. at 635. More generally, for purposes of computing countable assets, Medicaid does not consider assets held by other family members who might, by reason of love but without legal obligation, voluntarily contribute monies toward the grantor's support.[13]

Even less persuasive is the hearing officer's other rationale, which rested on the grantor's reserved power to direct a transfer of assets out of trust in exchange for other assets of equivalent value. Such an exchange would be equivalent to a sale of trust assets, with the grantor in the

---

[13] Of course, any voluntary transfer of monies or other assets by third parties to Roche, whether from distributions of trust assets or from other sources, would count toward Roche's Medicaid eligibility as and when she received them.

role of purchaser and the proceeds of the sale nonetheless retained by the trust as principal.  Such a transfer would not effect any distribution or diminution of trust principal, any more than a sale of trust assets to unrelated third parties, followed by a reinvestment of sale proceeds by the trust.  As a practical matter, of course, any assets held by the grantor and available to exchange for the assets transferred out of trust would themselves be treated as countable assets (if they existed).

Contrary to the conclusion of the hearing officer, pursuant to the terms of the trust there are no circumstances under which the trustee may distribute trust principal to Roche.  The case is in that respect in contrast to Doherty, supra, in which Art. XXII of the trust expressly authorized the trustee "in its sole discretion" and notwithstanding "anything contained in this Trust Agreement" to the contrary, to "pay over and distribute the entire principal of [the] Trust fund to the beneficiaries thereof [including the Medicaid applicant], free of all trusts." 74 Mass. App. Ct. at 441.

Conclusion.  The judgment of the Superior Court is reversed and a new judgment shall enter reversing the decision of the hearing officer.

So ordered.